In the Matter of the ESTATE OF George D. SHIRRAN.

George T. (Tom) Shirran, Appellant (Petitioner),

v.

James D. Shirran, Appellee (Respondent).

No. 97–270.

Supreme Court of Wyoming.

Aug. 9, 1999.

Representing Appellant: Michael S. Messenger and Mary L. Scheible of Messenger & Jurovich, Thermopolis, Wyoming.

Representing Appellee: John P. Worrall of Davis, Worrall, Bancroft & Greear, P.C., Worland, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

The district court granted Appellee James D. Shirran an implied easement across Appellant George T. (Tom) Shirran's property. Tom appeals from the district court's order denying his motion for reconsideration, alteration, or amendment of the judgment.

We affirm.

## ISSUES

Tom presents several issues for our consideration:

I. Whether the trial court erred as a matter of law when it failed to address the release language and ascribed to it the parties' intentions to settle their differences.

II. Whether the trial court erred as a matter of law when it held that Appellee has an implied easement across Appellant's property.

III. Whether the trial court erred as a matter of law when it relied on evidence not properly before it.

IV. Should this Court reverse, whether on remand, this Court should instruct the district court to award a reasonable sum for attorney fees and costs to appellant.

## FACTS

George D. (George) Shirran and his brother, Charles Shirran, owned the Paintrock Hereford Ranch in Big Horn County. Tom and James were George's sons. George died on August 14, 1992, and, shortly thereafter, his estate was admitted to probate.

Tom and James were the beneficiaries of George's estate, and they initially could not agree on the distribution of the assets of the estate. The parties were able, however, to enter into a Stipulation and Agreement Regarding Distribution of Estate Assets (the settlement agreement) on December 10, 1993. The settlement agreement included a provision dividing some property located in the Big Horn Mountains (the mountain property). The parties agreed that James would receive the southern one-third of the mountain property, together with a cabin located on that parcel, and Tom would receive the northern two-thirds of the property.

On March 15, 1994, the personal representative of George's estate filed a Final Report, Accounting, and Petition for Distribution. The personal representative requested that the district court distribute the assets pursuant to the terms of the settlement agreement. The district court subsequently entered an Order Approving Final Report and Accounting and Decree for Distribution.

On February 28, 1996, Tom petitioned the district court for an order setting forth the ownership of the estate property because James refused to execute the quitclaim deeds that were necessary for the division of the property. James apparently refused to sign the deeds because Tom indicated that James could no longer use a road which crossed Tom's portion of the mountain property to access his parcel. Tom insisted that James use a U.S. Forest Service road to access his portion of the mountain property.

Tom and James stipulated as to the facts of the controversy, and the parties submitted memoranda outlining their respective legal positions. The district judge held a hearing and issued his decision. He concluded that James had demonstrated the elements for establishment of an implied easement and, accordingly, granted him an easement over Tom's property. Tom filed a motion for reconsideration, alteration, or amendment of the judgment. The district court denied Tom's motion, and Tom appealed to the Wyoming Supreme Court.

Tom filed his brief with this Court on November 12, 1997. On December 10, 1997, James filed a statement of the evidence with the district court, and he filed his brief with this Court on December 22, 1997. Tom filed an objection in the district court to James' statement of the evidence and a motion to strike the statement. The district court entered an order on January 8, 1998, which approved James' statement of the evidence, noticed certain facts, denied Tom's motion to strike, and supplemented the record on appeal.

On January 20, 1998, Tom filed a motion with this Court to strike the district court's January 8, 1998, order approving the statement of the evidence. The Supreme Court vacated the oral argument setting and remanded the case to the district court to settle the record. The district court ordered Tom to prepare and file a statement of the evidence, and Tom complied. James responded by submitting his statement of the evidence, and the district court held a hearing on October 1, 1998, to settle the record. The district court entered an order striking its original

statement of the evidence and modifying the same. The parties subsequently submitted their respective briefs to this Court.

## DISCUSSION

### A. Effect of Settlement Agreement

Tom maintains that the district court erred by granting James an implied easement across his land because the settlement agreement precluded such a grant. James argues that the district court's decision was correct. We agree with James.

■ Wyoming law recognizes that, under certain circumstances, one person may be entitled to have an implied easement across another person's property. *Beaudoin v. Kibbie*, 905 P.2d 939, 941–42 (Wyo.1995); *Corbett v. Whitney*, 603 P.2d 1291, 1293 (Wyo.1979). The elements which must be satisfied in order to establish an implied easement are:

(1) Common ownership followed by a conveyance separating the unified ownership; (2) before severance, the common owner used part of the property for the benefit of the other part, a use that was apparent, obvious, and continuous; and (3) the claimed easement is necessary and beneficial to the enjoyment of the parcel previously benefitted.

*Beaudoin*, 905 P.2d at 941–42.

Tom maintains that the terms of the settlement agreement precluded the implication of an easement in favor of James. The settlement agreement stated in pertinent part:

1. The parties hereby stipulate and agree that there have been differences by and between them as respects the division of certain lands of the estate, as well as division of a Farm Loan Board Mortgage, cattle, grazing permits and personal property.

2. It is the intention of the parties hereto to resolve each and every one of those differences and to release, quitclaim and forever discharge from each to the other any claim that they might have against assets received under the estate by the other.

. . . .

13. The parties hereby stipulate and agree to divide the parcel of real estate specifically identified as follows:

**Township 49 North, Range 87 West, 6th P.M. Section 23: E½NW¼, E½SW¼**

**Excepting therefrom lands described in right-of-way deed to the United States of America for a road and recorded in Book 167 Page 8 of the Big Horn County Records.**

The parties hereto stipulate and agree that James D. Shirran shall receive the south one-third of the above described parcel and that George T. Shirran shall receive the north two-thirds of the above described parcel. Said lands will be transferred to the individual ownership of each party as set forth above and will be properly fenced with each party bearing one-half of the cost of said fencing. Should a survey be necessary to properly delineate the boundary line between the two properties, both parties agree to be responsible for one-half of the cost of such survey.

. . . .

15. This Agreement shall constitute the entire understanding of the parties as respects the distribution of assets under the above estate and incorporates herein all prior memoranda, understandings, negotiations and agreements by and between them as respects the assets set forth herein.

The settlement agreement did not address the means by which James would access his portion of the mountain property.

Tom argues that the settlement agreement clearly and unambiguously stated that it was meant to settle all the parties' differences concerning the estate assets. He claims, therefore, that, if the parties intended for James to have an easement across his property, they would have expressly provided for an easement in the settlement agreement.

We agree that the language of the settlement agreement clearly reflects the parties' shared intention to resolve their differences concerning the estate assets. Nevertheless, the very notion of an implied easement recognizes the failure of the parties to a proper-

ty transfer to address the issue of access to a severed parcel.

> [C]reation of easements by implication is an attempt to infer the intention of the parties to a conveyance of land and "the 'inference drawn represents an attempt to ascribe an intention to parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves.'" [*United States v. O'Connell*, 496 F.2d 1329,] 1332 [ (2d Cir.1974) ], citing Restatement of Property, § 476, comment A, at 2978 (1944).

*Corbett*, 603 P.2d at 1293. In recognizing implied easements, courts often presume that "the parties contracted [for the transfer of the property] with a view to the condition of the property as it actually was at the time of the transaction." 25 Am.Jur.2d *Easements and Licenses in Real Property* § 29, at 600 (1996); *see also Lutz v. Krauter*, 553 N.W.2d 749, 752–53 (N.D.1996). The condition of the property at the time of the transaction may include an obvious preexisting use of one part of the property to benefit another part. *See Lutz*, 553 N.W.2d at 753.

■ The parties to a conveyance can, however, prevent the implication of an easement upon severance of the property by entering into an agreement which clearly states that an easement will not pass when the property is transferred. 25 Am.Jur.2d, *supra*, at § 29; *see also Cox v. Trustmark National Bank*, 733 So.2d 353, 357 (Miss.Ct.App.1999) (addressing easements by necessity). In a decision approving the trial court's grant of an implied easement, the North Dakota Supreme Court stated: "[I]f the parties intended to except or exclude the implied easement from the grant, that exception or exclusion should have been clearly stated so as to leave no room for doubt." *Roll v. Keller*, 336 N.W.2d 648, 651 (N.D.1983); *see also Lutz*, 553 N.W.2d at 753.

■ We conclude, therefore, that, if Tom intended to preclude James from claiming an implied easement across his property, that intent should have been made explicit in the settlement agreement. The settlement agreement did not address the issue of ac-

cess, and, consequently, it cannot be read as excepting an implied easement. The settlement agreement did not prevent James from claiming an implied easement over Tom's property. This conclusion does not, however, end our inquiry; we must determine whether the elements necessary for the implication of an easement were satisfied in this case.

## B. Implied Easement

Tom asserts that the district court improperly considered facts which were not included in the parties' stipulation of facts when it determined that James was entitled to have an implied easement across his property. Tom maintains additionally that the district court erred when it concluded that James had satisfied the criteria for establishing an implied easement. James argues that the district court's decision was correct. We agree with James.

Two maps were attached to the parties' stipulation of the facts. The maps disclosed two routes that could be used to access James' property; i.e., the Forest Service road and the road over Tom's property. Both the Forest Service road and the road over Tom's property branched off Battle Park Road. Battle Park Road intersects with U.S. Highway 16 at the Deer Haven Lodge. The parties could apparently gain access to Battle Park Road by traveling from Hyattville or from the Deer Haven Lodge. The parties stipulated that the access desired by James over Tom's property was the usual means of access to James' property and that the parties usually accessed their properties by traveling Battle Park Road from the Deer Haven Lodge side rather than from the Hyattville side.

The district court quoted from James' memorandum in the decision letter that it issued after the hearing on whether or not James was entitled to have an implied easement across Tom's property.

> [JAMES] points out in his brief that the alternate access route, the U.S. Forest Service road mentioned by TOM in his brief, "requires going approximately four or five miles out of the way as opposed to a few hundred yards. The access easement

that is being requested by [James] in this matter enters immediately off of a regularly traveled road as opposed to a dirt track and would result in little if any disruption to the use of the property being transferred [to] his brother Tom."

The district court acknowledged that these facts were not included in the stipulated facts. It stated, however, that, although Tom argued that there was no evidence with regard to the quality of the roads, he did not dispute the significant difference in distance between the two routes. The district court stated that, in any event, the difference in distance between the two routes was immediately obvious from the maps that were attached to the stipulation.

After the Supreme Court remanded the case for a settlement of the record, the district court entered an order striking its original statement of the evidence and modifying the same, which stated in relevant part:

2. The Court is only considering the record in this matter and the Statement of Evidence contained in the record in particular. The Order approving the Statement of Evidence should be stricken and revised as follows:

a. The only actual evidence received in this matter was the stipulation of facts filed in the court record September 2, 1996, along with the maps that are attached to it.

b. In addition to the facts submitted by stipulation and the exhibits incorporated therein by reference, this Court considered its own knowledge gained through life experience and a degree of familiarity, which it would not characterize as extensive knowledge, of the Big Horn Mountains.

c. In addition to life experience, reasonable inferences may be drawn from the facts, among which are those that can be drawn, for example, from examining the maps these parties attached to the stipulation, such as discerning from the lines which roads are better than others, comparative distances and the like. The maps submitted by stipulation reveal the following facts:

(i) The access proposed by [James] is superior to the access proposed by Tom.... The map shows that it is a better road.

(ii) Driving up from Hyattville ..., it would be, certainly, four to five miles longer to use the access proposed by Tom.

(iii) The access proposed by [James] is, by stipulation, the access the family has used traditionally to get to the cabin, even coming from Deer Haven, much less from Hyattville.

....

4. Further, based on the life experiences of the Court, the Court is aware that it is extremely cold and harsh in the high mountains of the Big Horns in the winter time. The back roads are very rough, and they are not accessible by motor vehicle, except by snowmobile during the winter. The distances on the maps may appear short in inches or fractions of inches, but in experiences on the roads, those distances are considerable and sometimes burdensome. Hyattville, Wyoming, sits at the western base of the Big Horn Mountains at about 4,000 feet. The road leading from Hyattville to the Battle Park Road must proceed eastward several miles up the slope of the Big Horn Mountains.

5. Additional undisputed facts presented are:

a. The Paintrock Hereford Ranch has been in the Shirran family for many years, beginning with the father of George D. Shirran.

b. The customary access for the Shirrans to the cabin on the mountain property has always been the access off the Battle Park Road.

c. The Battle Park Road is a well-traveled road, being the principal thoroughfare in the area of the mountain property.

We consider first whether the district court erred when it relied on facts that were set out in James' legal memoranda but were not included in the stipulated facts. A district court has discretion in settling the record. *Jacobs v. Jacobs*, 895 P.2d 441, 444

(Wyo.1995). A court may not, however, consider statements made by counsel in legal memoranda or briefs as evidence in a case. *Majority of Working Interest Owners in Buck Draw Field Area v. Wyoming Oil and Gas Conservation Commission,* 721 P.2d 1070, 1077 (Wyo.1986).

■ The district court did not rely on the unsupported statements of counsel when it made its decision concerning James' implied easement claim or when it settled the record. The district court's findings included: (1) facts which were explicit in the stipulation of facts; (2) facts that were readily discernable from the maps attached to the stipulation; and (3) general historical facts that were well within the trial court's knowledge as a result of its consideration of the probate matter over a period of several years. We have not discovered anything irregular in the district court's findings, and we conclude, therefore, that the district court did not abuse its discretion when it settled the record.

We turn next to the issue of whether or not the requisite elements for establishing an implied easement were proven in this case. The parties agree that the first element of an implied easement—unity of ownership of the dominant and servient estate and subsequent severance of the estate—was satisfied. They disagree, however, as to whether or not the other two elements were established.

■ The second element requires a showing that, prior to the severance of the property, the common owner used part of the property for the benefit of the other part in an apparent, obvious, and continuous manner. *Beaudoin,* 905 P.2d at 942. The parties expressly stipulated that the access sought by James was the usual means of accessing his portion of the mountain property. This statement, combined with the fact that the mountain property had been owned by the Shirran family for many years, was sufficient to establish the second element.

We look now at the third element; i.e., the claimed easement was necessary and beneficial to the enjoyment of the benefited parcel. *Id.* We discussed the concept of necessity in the context of implied easements in *Corbett,* 603 P.2d at 1293. We quoted from Restate-

ment of Property § 476 cmt. G, at 2983–84 (1944), as follows:

"... If no use can be made of land conveyed or retained without the benefit of an easement, it is assumed that the parties intended the easement to be created ...

"... If land can be used without an easement, but cannot be used without disproportionate effort and expense, an easement may still be implied in favor of either the conveyor or the conveyee on the basis of necessity ...

"... In the different situations that may appear, a constantly decreasing degree of necessity will require a constantly increasing clearness of implication from the nature of the prior use. Accordingly, no precise definition of necessity can be made."

603 P.2d at 1293.

As we stated *supra,* the parties stipulated that the road across Tom's property had historically been used to access James' property. The district court found that, under certain circumstances, James would be required to travel a greater distance if he were required to use the Forest Service road rather than the road across Tom's property. It also found that the access route proposed by James was superior to the access route proposed by Tom because the roads that James would be allowed to traverse if the easement were granted were of better quality than the roads which he would be required to use if the easement were denied.

The maps confirm the district court's findings with regard to the relative differences in the distances and qualities of the two roads. The differences between the two roads are material, especially in light of the fact that the maps show that the mountain property is located at an elevation of approximately 8,300 feet. With these facts in mind, we conclude that James would be required to endure disproportionate effort and expense in order to access his property if an implied easement across Tom's property were not allowed. The claimed easement is, therefore, necessary and beneficial to James' enjoyment of his part of the mountain property. The district court did not err when it granted James an implied easement over Tom's property.

We do not need to address Tom's issue concerning attorney's fees because we are affirming the district court's decision.

Affirmed.