2010 WY 160

**William S. HANSULD and Tia J. Hansuld, Appellants (Plaintiffs),**

v.

**LARIAT DIESEL CORPORATION, and Marvin Piel, Appellees (Defendants).**

**Lariat Diesel Corporation, and Marvin Piel, Appellants (Defendants),**

v.

**William S. Hansuld and Tia J. Hansuld, Appellees (Plaintiffs).**

Nos. S–09–0206, S–09–0207.

Supreme Court of Wyoming.

Dec. 9, 2010.

See also 81 P.3d 215.

Representing William S. Hansuld and Tia J. Hansuld: Larry W. Harrington of Harrington Law Firm, P.C., Casper, Wyoming.

Representing Lariat Diesel Corporation and Marvin Piel: Thomas M. Hogan, Casper, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT,* and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] In these consolidated appeals, two adjoining landowners dispute two separate easements. In appeal No. S–09–0206, the Hansulds appeal a district court finding that they do not have an easement for a water line across the property of Lariat Diesel Corporation. We reverse.

[¶ 2] In appeal No. S–09–0207, Lariat Diesel Corporation and its president, Marvin Piel, appeal a district court's ruling declining to require a precise description in metes and bounds of the location of an access easement across the Hansulds' property. We reverse.

## FACTS

[¶ 3] We begin with the facts because both appeals share common facts. This is the second time these parties have been before this Court. *See Hansuld v. Lariat Diesel Corp.,* 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo.2003) (*Hansuld I* ). In *Hansuld I,* this Court related the following facts:

Originally, Chapin and Ratcliff, LLC (LLC) owned both 3100 East Yellowstone and 3110 East Yellowstone, Natrona Coun-

*\* Chief Justice at time of oral argument.*

ty, Wyoming. In 1995, LLC owner, Hardy Ratcliff, approached Lariat owner Marvin Piel (Piel) with the thought of selling Lariat both properties located at 3100 and 3110 East Yellowstone. Lariat was interested in 3100 East Yellowstone only and did not require the other lot.

The parties agreed that if Lariat would purchase 3100 East Yellowstone, Lariat would be allowed access over the 3110 East Yellowstone lot for its truck access. Access across 3110 East Yellowstone was key to Lariat's business located at 3100 East Yellowstone. Without it, Lariat could not get heavy trucks in and out of its shop without great difficulty. On July 2, 1995, the LLC sold 3100 East Yellowstone to Lariat.

A little over a year later, on August 5, 1996, the LLC and Gary L. Petley (Petley) entered into a Purchase Agreement concerning the property adjoining Lariat, 3110 East Yellowstone. American Title Company issued a title commitment for the property on August 19, 1996.

Some days before the closing date of the sale of 3110 East Yellowstone to Petley, the LLC proposed at a meeting with Lariat that it would give Lariat a formal written ingress and egress easement for customers crossing 3110 East Yellowstone in exchange for Lariat's giving the LLC a sewer "easement" across the Lariat property for the sewer line servicing the adjoining property at 3110 East Yellowstone. Mr. Petley was invited to this meeting because this "reciprocal easement" arrangement would both burden and benefit 3110 East Yellowstone and his proposed purchase. No other consideration was exchanged. Petley understood the arrangement and had no problems with it.

After the meeting and before the closing on 3110 East Yellowstone, the LLC executed and filed an "Access Agreement" that contained a legal description granting egress and ingress over the southerly 100 feet of 3110 East Yellowstone. The Natrona County Clerk filed the "Sewer Easement" at 4:00 p.m. and the "Access Agreement" at 4:02 p.m. on August 30, 1996. Also on that same day, the Petley purchase

of 3110 East Yellowstone closed, and the warranty deed was filed with the Natrona County Clerk at 10:41 a.m. The title policy that issued a few days after the closing included the recorded access agreement in the policy for informational purposes.

Petley sold 3110 Yellowstone to Wildcat Whackers on June 25, 1999. Later, Wildcat Whackers listed it for sale with a realtor who noticed the access agreement and consulted an attorney. In the course of soliciting Lariat to buy the property, the realtor indicated to it that the realtor believed the easement was void because it was outside of the chain of title. Lariat summarily rejected the offer to purchase and told the realtor that it believed the easement was valid and enforceable. That same realtor advised Hansulds of the easement, and Hansulds purchased the property on October 31, 2001.

Immediately after purchasing the property at 3110 East Yellowstone, Hansulds notified Lariat that any future access across 3110 East Yellowstone would be denied. Hansulds then constructed a chain link fence along the property line between 3110 and 3100 East Yellowstone and along the East Yellowstone frontage to insure that Lariat had no access across 3110 East Yellowstone. Hansulds filed suit to quiet title and sought a declaratory judgment on the validity of the access agreement. Summary judgment motions were denied, and the case proceeded to a bench trial.

After suit was filed, East Yellowstone Highway, the access road to both parties' property, was straightened, resulting in the abandonment of a portion of the right-of-way by the State of Wyoming. The "Resolution for Abandonment" was filed with the county clerk on September 20, 2001. Wildcat Whackers conveyed the abandoned property to Hansulds by quit-claim deed. The land acquired by Hansulds is approximately forty feet wide and lies between Hansulds' southern boundary and Yellowstone Highway.

The district court found that the abandonment added property to the southerly parts of both Hansulds' and Lariat's prop-

erties. The district court determined that the LLC intended to convey an easement for access to the 3100 property and held that an implied easement existed. *Hansuld I*, ¶¶ 4–12, 81 P.3d at 217–18.

[¶ 4] The Hansulds appealed the finding of the existence of an implied access easement. While the appeal was pending, Lariat filed a motion to show cause why the Hansulds should not be held in contempt for not allowing adequate ingress and egress along the implied access easement to its property. The district court held an evidentiary hearing on the motion and, on March 3, 2003, issued its decision letter determining the Hansulds were not in contempt because they had established a passageway sufficient to accommodate the semi-tractor trailers needing to travel to and from the Lariat property.

[¶ 5] The *Hansuld I* Court affirmed the district court decision finding an implied access easement. Since *Hansuld I* was decided, the parties have continued to feud. A water line crosses Lariat's property before reaching the Hansulds' property. A valve on Lariat's property controls the flow of water to the Hansulds' property. In January 2006, Piel turned off the Hansulds' water, claiming that no easement existed in favor of the Hansulds' property for the water line. The Hansulds brought the instant legal action, seeking, among other things, an injunction and a declaration that they had an implied water line easement across Lariat's property. Lariat counterclaimed seeking, among other things, declaratory relief for a precise legal description of the location and extent of its implied access easement. The parties filed cross-motions for summary judgment.

[¶ 6] After a hearing, the district court granted summary judgment to Lariat on the issue of the implied water line easement. The district court found there was no intent on the part of LLC, the common owner, to create an easement for the water line and that such an easement was not necessary because the Hansulds had ready access to the water main and could easily install their own water line.

[¶ 7] The district court granted summary judgment to the Hansulds on Lariat's request for clarification of the exact location of the access easement, deciding the claim was barred by collateral estoppel and res judicata in that the same issue and claim was before the district court in *Hansuld I*. The district court then certified its summary judgment rulings as immediately appealable pursuant to W.R.C.P 54(b).[1] The parties cross-appealed.

### *APPEAL NO. S–09–0206*

### ISSUES

[¶ 8] The Hansulds present the following issues for this Court's review:

I. Did the trial court err by finding that the water line crossing property at 3100 East Yellowstone is not necessary and beneficial to the enjoyment of Appellant's property at 3110 East Yellowstone?

II. Did the court err in finding that "certainly, the original owner was aware of the utilities and their location but never sought more than a sewer line and access to the sewer line, to fix and maintain?"

### DISCUSSION

■ [¶ 9] This is an appeal from a summary judgment. We engage in a de novo review of summary judgments. *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008). We use the same criteria and materials as the district court. *Fayard v. Design Comm. of the Homestead Subdivision*, 2010 WY 51, ¶ 9, 230 P.3d 299, 302 (Wyo.2010); *McGarvey v. Key Prop. Mgmt.*, 2009 WY 84, ¶ 10, 211 P.3d 503, 506 (Wyo.2009). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Bever-*

---

1. W.R.C.P 54(b) states in pertinent part:
   When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

*ages, Inc.,* 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002).

[¶ 10] Wyoming will recognize an implied easement across another person's property under certain circumstances. *Shirran v. Shirran,* 987 P.2d 140, 142 (Wyo.1999); *Beaudoin v. Kibbie,* 905 P.2d 939, 941–42 (Wyo.1995); *Corbett v. Whitney,* 603 P.2d 1291, 1293–94 (Wyo.1979). Our goal in determining whether an easement exists by implication is to discern the intent of the parties:

> The creation of easements by implication is an attempt to infer the intention of the parties to a conveyance of land. *Gray v. Norwest Bank Wyoming, N.A.,* 984 P.2d 1088, 1091 (Wyo.1999). "This inference drawn from the circumstances surrounding the conveyance alone represents an attempt to determine the intention of parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves." *Id.* (citing *Corbett,* 603 P.2d at 1293). "The doctrine of implied easements was created for courts to examine the particular facts suggesting the intent of the parties to a conveyance and determine if the parties omitted granting an easement reasonably necessary for the use and enjoyment of the property." *Id.* The implied easement does not arise where the parties to the conveyance expressly agree otherwise or where proof of its elements is not established. *Id.*
>
> In applying the doctrine of implied easements, we must determine the parties' intent at the time that the unified property was severed from a single possessory interest by conveyance from the common owner to a grantee.

*Hansuld I,* ¶¶ 16–17, 81 P.3d at 218–19. The elements which must be satisfied in order to establish an implied easement are:

> (1) common ownership followed by a conveyance separating the unified ownership; (2) before severance, the common owner used part of the property for the benefit of the other part, a use that was apparent, obvious, and continuous; and (3) the claimed easement is necessary and benefi-

cial to the enjoyment of the parcel previously benefitted.

*Id.,* ¶ 15, 81 P.3d at 218. *See also Kawulok v. Legerski,* 2007 WY 133, ¶ 13, 165 P.3d 112, 116 (Wyo.2007).

*Issue I—Is an easement for a water line across the Lariat property, in favor of the Hansulds' property, necessary and beneficial?*

[¶ 11] Of the three elements that must be satisfied in order to find the existence of an implied easement, the first two elements are conceded. Thus, only the third element is at issue in this appeal. An easement for a water line is certainly beneficial to the Hansulds. The question is whether such easement is necessary. The evidence developed for summary judgment was that the Hansulds could lay a direct water line from the water main for approximately $25,000. As a result, the district court determined the Hansulds had a reasonable alternative access directly to the water main and thus the proposed easement for a water line was not necessary. We disagree.

[¶ 12] One of the factors we analyze in order to determine the necessity of an easement is whether the expense of pursuing an alternative to the easement is disproportionate to the burden on the servient estate of implying an easement across the property. *Shirran,* 987 P.2d at 142; *Corbett,* 603 P.2d at 1293. In the instant case, we are dealing with an underground utility line. This creates only a minimal burden on Lariat's property. On the other hand, although it would not be technically complex, it would cost the Hansulds approximately $25,000 to run their own water line to the water main. Under the circumstances, we do not see why this money should be expended to essentially duplicate a resource already in place. The burden to the Lariat property is simply not great enough. We find that putting the Hansulds to the expense of laying an equivalent water line entails a disproportionate effort and expense to the finding of the existence of an easement for the water line by implication.

*Issue II—Intent of LLC*

[¶ 13] Although necessary and beneficial to the Hansuld property, it remains to be determined whether the creation of an easement was intended by LLC when it originally divided the property. The district court, in finding that LLC did not intend to convey an easement to a water line, looked to the express agreement at the time of transfer that exchanged an easement for the sewer line for the access easement. The district court reasoned that the parties must have known about the existence of the water line and the failure to include a grant of an easement for a water line at the same time reveals an intent not to grant such easement. We agree with the Hansulds that this is pure speculation on the part of the district court, unsupported by any record evidence.

[¶ 14] A legal presumption exists that the intent of LLC was to convey the property in the same condition as it was at the time of the transaction. *Hansuld I,* ¶ 19, 81 P.3d at 219; *Shirran,* 987 P.2d at 143. Restatement (Third) of Property: Servitudes § 2.12 (2000) states:

> Unless a contrary intent is expressed or implied, the circumstance that prior to a conveyance severing the ownership of land into two or more parts, a use was made of one part for the benefit of another, implies that a servitude was created to continue the prior use if, at the time of the severance, the parties had reasonable grounds to expect that the conveyance would not terminate the right to continue the prior use.

> The following factors tend to establish that the parties had reasonable grounds to expect that the conveyance would not terminate the right to continue the prior use:

> (1) the prior use was not merely temporary or casual, and

> (2) continuance of the prior use was reasonably necessary to enjoyment of the parcel, estate, or interest previously benefited by the use, and

> (3) existence of the prior use was apparent or known to the parties, or

> (4) the prior use was for underground utilities serving either parcel.

The water line meets all these factors. Lariat presented no evidence to adequately rebut the presumption that an easement for the water line was intended. Under the specific facts and circumstances of this case, we find the district court's decision granting summary judgment to Lariat on this issue was in error.

## CONCLUSION

[¶ 15] The decision of the district court finding no easement exists by implication for the water line, and consequently granting summary judgment to Lariat, is reversed. Further, the record extant contains no genuine questions of material fact and supports the sole legal conclusion that an easement for the water line should be implied. Thus, summary judgment in favor of the Hansulds is appropriate. Because of the history of the feuding between these parties and the length of time they have spent in litigating, we hereby remand to the district court with directions to enter partial summary judgment in favor of the Hansulds on the issue. *See Leithead v. American Colloid Co.,* 721 P.2d 1059, 1063–64 (Wyo.1986). The case is remanded for further proceedings consistent with this opinion.

## *APPEAL NO. S–09–0207*
### ISSUES

[¶ 16] Lariat presents the following issues for this Court's review:

1. Did the trial court err as a matter of law in granting Summary Judgment to the Appellees/Hansulds on Appellant's/Lariat's Third Claim for Declaratory Relief?

2. Is Appellant/Lariat entitled to Summary Judgment on its Third Claim for Declaratory Relief?

More simply, the issue in this appeal is whether the district court correctly ruled on summary judgment that Lariat was precluded from seeking a declaration of the exact legal description of the location of its access easement across the Hansulds' property.

## DISCUSSION

[¶ 17] This is an appeal from a summary judgment. We engage in a de novo review of

summary judgments. *Glenn v. Union Pacific R.R. Co.,* 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).

[¶ 18] While res judicata and collateral estoppel share the same goal of serving the interest of finality, they do so in substantially different ways. Res judicata bars the relitigation of previously litigated claims or causes of action as well as those that could have been litigated within the preceding action. *Wyo. Med. Ctr., Inc. v. Wyo. Ins. Guar. Ass'n,* 2010 WY 21, ¶ 15, 225 P.3d 1061, 1065 (Wyo.2010); *Burke v. State ex rel. Dep't of Health,* 2009 WY 138, ¶ 14, 219 P.3d 122, 125 (Wyo.2009). Collateral estoppel, on the other hand, bars relitigation of previously litigated issues. *R.C.R., Inc. v. Deline,* 2008 WY 96, ¶ 17, 190 P.3d 140, 153 (Wyo.2008); *Pokorny v. Salas,* 2003 WY 159, ¶ 12, 81 P.3d 171, 175 (Wyo.2003) More simply: res judicata applies to whole claims, whether litigated or not, whereas collateral estoppel applies to particular issues that have been contested and resolved.

[¶ 19] Turning first to the applicability of res judicata to the instant case, as stated res judicata is intended to prevent repetitious lawsuits over claims that have been, or, because of an intrinsic relationship to matters presented, should have been, decided in an earlier legal action. The district court in the instant case reasoned that the precise legal description of the access easement was a matter intrinsic to the determination that an access easement existed by implication. As such, the matter should have been brought before the trial court in *Hansuld I.* We disagree.

[¶ 20] The criteria used to determine res judicata's applicability to a situation are: (1) the parties are identical; (2) the subject matter is identical; (3) the issues are the same and related to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. *Os-*

*born v. Kilts,* 2006 WY 142, ¶ 9, 145 P.3d 1264, 1267 (Wyo.2006); *Newell v. Trumper,* 765 P.2d 1353, 1355 (Wyo.1988). While factors one and four are met in the instant case, factors two and three are not. The subject matter presented to the district court in *Hansuld I* (and subsequently this Court on appeal) was whether an access easement across the Hansuld property, to the benefit of the Lariat property, existed by implication. Location is a distinct subject matter from existence. The subject matters are not intrinsically interwoven, but rather sequential. Only after an access easement is determined to exist would the location of the alleged access easement come into question. A judgment cannot be given effect of precluding claims that did not even exist at time of judgment.

[¶ 21] Moving then to collateral estoppel, collateral estoppel precludes litigation of issues actually litigated and necessary to the outcome of the prior case.[2] The district court in the instant case reasoned that collateral estoppel applied because the exact location of the access easement was before the district court in *Hansuld I* when it determined the issue of whether the Hansulds were in contempt of its declaration that an access easement existed. In determining the issue of contempt, the district court in *Hansuld I* considered evidence as to whether the path established by the Hansulds allowed sufficient ingress and egress to allow semitractor trailers and other large vehicles access to the Lariat property. The district court in the instant case reasoned that the issue of contempt could not be determined without first determining the location of the access easement, even if it was not expressed in metes and bounds.

[¶ 22] Although this reasoning has a certain appeal, we find we must disagree. The issue put before the court by Lariat in its motion for order to show cause was simply whether the Hansulds had opened enough

---

2. The elements of collateral estoppel are as follows: (1) the issue decided in the prior adjudication is identical with the issue presented in the present action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Pokorny,* ¶ 12, 81 P.3d at 175.

space for large vehicles to access the Lariat property. The evidence was primarily on how much room was needed for large vehicles to maneuver in and out of the Lariat property and whether the Hansulds had opened the required room. The ultimate finding of the district court was that the Hansulds were "not in contempt of this Court for failing to allow ingress and egress along [the Hansulds'] property for access to [Lariat's] property." In short, collateral estoppel does not apply unless the issue decided in a prior adjudication was identical to the issue presented in the present action. As can be seen, the only issue was whether the Hansulds were allowing adequate access. The exact location of the access easement found to exist by implication was not at issue. Lariat's request for declaration of the exact legal description of the location of its access easement across the Hansulds' property is not precluded by the doctrine of collateral estoppel.

## CONCLUSION

[¶ 23] The matter before the district court in *Hansuld I* dealt solely with whether an access easement existed by implication. This matter is distinct from where such easement might be situated. As such, neither res judicata nor collateral estoppel preclude Lariat from seeking an exact legal description of the access easement in the instant action. The district court's decision in this appeal is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.