# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 71

APRIL TERM, A.D. 2021

May 28, 2021

CHANCY and KIM WHEELDON,

Appellants
(Plaintiffs),

v.

ELK FEED GROUNDS HOUSE, LLC, a
Wyoming limited liability company,

Appellee
(Defendant).

S-20-0200

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*
James R. Salisbury of The Salisbury Firm, P.C., Cheyenne, Wyoming.

*Representing Appellee:*
Mark D. Sullivan of Mark D. Sullivan, P.C., Wilson, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]  Spouses Chancy and Kim Wheeldon (the Wheeldons) sued their neighbor Elk Feed Grounds House, LLC (Elk Feed) for quiet title and a declaratory judgment that they have an implied easement across Elk Feed's property for commercial recreational activities. After a bench trial, the district court decided the Wheeldons failed to establish the alleged easement is necessary and beneficial to the enjoyment of their property—an element required to establish an implied easement. The Wheeldons appeal on two grounds. First, they claim the court applied the incorrect standard to determine necessity. Second, they contend the court erroneously found Elk Feed was a bona fide purchaser entitled to statutory and common law protections. We affirm.

### ISSUES

[¶2]  We restate the issues as:

> I. Whether the district court applied the correct "necessity" standard to establish an implied easement.
>
> II. Whether the district court found Elk Feed was a bona fide purchaser entitled to statutory and common law protections, and whether the court's bona fide purchaser references were pertinent to the "necessity" analysis.

### FACTS

[¶3]  The Wheeldons own and operate the "Mill Iron Ranch" near Horse Creek Road in Jackson, Wyoming. The ranch has been in operation as a family-run business for many decades. It offers various recreational activities to visitors throughout the year. Pertinent to this appeal, those activities include horseback trail rides in summer and sleigh rides in winter.

[¶4]  Several property transactions are central to this appeal. In May 2007, the Wheeldons divided approximately 80 acres they owned into five separate tracts, creating the Wheeldon Family Subdivision. They retained ownership of Tract 5 (60 acres) for the ranch. They gifted the adjacent tract, Tract 2 (5 acres), to their son Coby Wheeldon on May 10. In September 2008, Coby conveyed Tract 2 to himself and his then-wife so they could obtain financing to build a home on the property. Each conveyance reflected the property was unencumbered except for encumbrances of record. No deed or other instrument for any of these conveyances reserved an express easement for trail or sleigh

1

rides. There is no dispute the Wheeldons used Tract 2 for each type of ride before and after giving Coby Tract 2.[1]

[¶5] In 2014, the Wheeldons sold the northern 40 acres of Tract 5 to the Wyoming Game & Fish Commission. Around the same time, they conveyed an easement to Game & Fish so its employees could use Horse Creek Road to drive through Mill Iron Ranch to access the elk feeding grounds.

[¶6] When Coby and his wife divorced around 2014, the court ordered them to sell Tract 2. They sold the property to Elk Feed in June 2017. Elk Feed's sole member, John Boerschig, knew the Wheeldons claimed they had an implied easement across Tract 2, but he purchased the property believing their claim had no merit. After purchasing the property, Elk Feed installed a fence that blocked access to the trails.

[¶7] The Wheeldons filed their complaint for quiet title and declaratory judgment in August 2017. They sought rights to a 60 foot wide implied easement across Tract 2 for "commercial and/or recreational uses that all originate on and are headquartered within Tract 5, including, but not limited to, their wagon rides, sleigh rides, horseback rides, and outfitting business; with the exact location of such [t]rails easement to be established by a survey." They alleged their trail use has been apparent, obvious, and continuous, and that an easement over Tract 2 is necessary and beneficial to the ranch.

[¶8] It took approximately two and a half years for the case to make its way to trial. During that time, the court granted the Wheeldons a preliminary injunction, allowing them to use the trails pending trial. The parties engaged in settlement negotiations and completed discovery. The court denied the Wheeldons' motion for summary judgment.

[¶9] The court held a fact-intensive three-day bench trial in February 2020. It heard testimony from both parties, several expert witnesses, and third-party witnesses. It admitted dozens of exhibits.

[¶10] In its order, the court found the claimed easement impacted only two of the ranch's business activities: the four-hour horse trail rides and the sleigh rides.[2] It included the following "rough diagram" of the claimed easement across Tract 2 for illustrative purposes:[3]

---

[1] The sleigh route is a loop that begins and ends on Tract 5. Sleighs leave a barn on Tract 5, follow the Wheeldons' private road until it turns north, cross a creek, and proceed across Tract 2 to the elk feeding grounds. Then sleighs turn left, cross Tract 2 again, and return to the barn. The four-hour horse trail route also begins on Tract 5, but it crosses a different section of Tract 2, and then proceeds onto United States Forest Service land north of Tract 2.

[2] The Wheeldons have not appealed this aspect of the court's order.

[3] The record contains various maps but none depict the claimed easement.



The court then decided the Wheeldons failed to carry their burden to prove the claimed easement is necessary and beneficial to the enjoyment of Tract 5. Accordingly, they did not have an implied easement over Elk Feed's property. This appeal followed.

## STANDARD OF REVIEW

[¶11] "After a bench trial, we review the district court's factual findings for clear error and its conclusions of law de novo." *Fuger v. Wagoner*, 2020 WY 154, ¶ 8, 478 P.3d 176, 181 (Wyo. 2020) (citing *Mattheis Co. v. Town of Jackson*, 2019 WY 78, ¶ 18, 444 P.3d 1268, 1275 (Wyo. 2019)). The only "factual findings" the Wheeldons challenge are the district court's references to Elk Feed's bona fide purchaser status. "We review the question of whether the district court applied the proper legal standard *de novo*." *CBM Geosolutions, Inc. v. Gas Sensing Tech. Corp.*, 2009 WY 113, ¶ 6, 215 P.3d 1054, 1057 (Wyo. 2009) (citing *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo. 1993)); *see also Hansuld v. Lariat Diesel Corp.*, 2015 WY 12, ¶¶ 12–15, 341 P.3d 428, 432–33 (Wyo. 2015) (*Hansuld III*).

## DISCUSSION

### I.     The district court applied the correct necessity standard.

[¶12] The Wheeldons had to prove three elements to establish an implied easement:

> (1) common ownership followed by a conveyance separating the unified ownership; (2) before severance, the common owner used part of the property for the benefit of the other part, a use that was apparent, obvious, and continuous; and (3) the

claimed easement is necessary and beneficial to the enjoyment of the parcel previously benefitted.

*O'Hare v. Hulme*, 2020 WY 31, ¶ 30, 458 P.3d 1225, 1237 (Wyo. 2020) (quoting *Hansuld v. Lariat Diesel Corp.*, 2010 WY 160, ¶ 10, 245 P.3d 293, 298 (Wyo. 2010) (*Hansuld II*)). Only the third element, "necessity," is in dispute here. The Wheeldons argue the district court required them to establish strict necessity rather than reasonable necessity.

[¶13] More specifically, the Wheeldons assert the court blurred the line between easements by necessity (strict necessity) and implied easements (reasonable necessity) when it explained:

> 30. <u>Implied Easements.</u> Implied easements are recognized in the law, designed to create an easement where the parties to a transaction did not record an express easement. The failure to record an easement is often due to an oversight or a lack of sophistication in the transaction. Restatement of Property § 476 cmt. a.
>
> 31. Implied easements are seen in cases for pipelines and roads, both of which are physical infrastructure serving the dominant property. In Wyoming, some of the central cases are *In re Estate of Shirren*, 987 P.2d 140 (Wyo. 1999), *Hansuld v. Lariat Diesel Corp. (Hansuld I)*, 2003 WY 165, ¶ 17, 81 P.3d 215, 219 (Wyo. 2003), and *Hansuld v. Lariat Diesel Corp. (Hansuld II)*, 2010 WY 160, 245 P.3d 293 (Wyo. 2010).
>
> 32. This case is unique in that body of case law. This case is not for access to the [Wheeldons'] property for necessary infrastructure like a pipeline or road. This is a claim for an entirely commercial and recreational use, that provides no access <u>to</u> [the Wheeldons'] property but only provides access <u>from</u> [the Wheeldons'] property, by guests and for a solely commercial and recreational purpose.
>
> 33. If this Court were to find that [the Wheeldons] have an implied easement for entirely commercial and recreational use across the property of a neighbor, this case would be unique in Wyoming's case law.

* * * *

4

42. As noted above, this is an unusual easement case. The use of [Elk Feed's] property is not necessary for the [Wheeldons] to use their property. [The Wheeldons'] property is fully accessible without the necessity of additional easements for roads, water, or other infrastructure. As the evidence showed at trial, alternative routes for the sleigh rides and trail rides <u>are</u> available which do not require the use [of Elk Feed's] property. Therefore, the Court will need to evaluate the proportionate expense to [the Wheeldons] and burden to [Elk Feed] of the claimed easements to determine necessity. The claimed easements are only purported to be necessary for continued commercial and recreational operations, a type of use to which the doctrine of implied easements may not be easily adapted. While the law of implied easements seems to be ill-suited to this scenario, the Court analyzes the matter as the parties presented it, applying the facts presented to the contested element of necessity.

* * * *

100. The Court again notes [] that implied easement law seems more suited to address physically necessary access to property such as for roads, utilities, water, and sewer. Implied easement law may not be well-suited for entirely commercial and recreational use of a neighbor's property. Recognizing an implied easement in the facts of this case, after the comparison of expenses and burdens, and after considering the Restatement factors, would appear to be an unwarranted and significant expansion of implied easement law in Wyoming.

According to the Wheeldons these paragraphs suggest the court took the position that because their property is not landlocked or deprived of utility access, the claimed implied easement is not reasonably necessary for the use and enjoyment of their property. We disagree.[4]

---

[4] We also disagree with the Wheeldons' contention that the court created a presumption against an implied easement and improperly considered the nature of the easement in its analysis. Although the court analyzed factors unrelated to necessity, and perhaps overemphasized the unique nature of this case (as involving commercial recreational use rather than physical or utility access), the court did not ignore our precedent or impose any presumption. Most important, it did not deny the Wheeldons' implied easement claim based on the unique nature of the use. Rather, it "analyze[d] the matter as the parties presented it, applying the facts presented to the contested element of necessity."

5

[¶14] Regarding "necessity" we have said:

> "… If no use can be made of land conveyed or retained without the benefit of an easement, it is assumed that the parties intended the easement to be created …
>
> "… If land can be used without an easement, but cannot be used without disproportionate effort and expense, an easement may still be implied in favor of either the conveyor or the conveyee on the basis of necessity …
>
> "… In the different situations that may appear, a constantly decreasing degree of necessity will require a constantly increasing clearness of implication from the nature of the prior use. Accordingly, no precise definition of necessity can be made."

*Miner v. Jesse & Grace, LLC*, 2014 WY 17, ¶ 49, 317 P.3d 1124, 1140 (Wyo. 2014) (quoting *In re Estate of Shirran*, 987 P.2d 140, 145 (Wyo. 1999)); *see also Corbett v. Whitney*, 603 P.2d 1291, 1293 (Wyo. 1979) (citing Restatement of Property § 476 cmt. g (1944)).

[¶15] Moreover, necessity must be determined based on the circumstances existing at the time of severance, not the judicial proceedings. *See Miner*, ¶ 35, 317 P.3d at 1136; 28A C.J.S. *Easements* § 92, Westlaw (March 2021 Update) (collecting cases); *Capstar Radio Operating Company v. Lawrence*, 160 Idaho 452, 461, 375 P.3d 282, 291 (Idaho 2016); *Proper v. Greager*, 827 P.2d 591, 594 (Colo. App. 1992); *Norken Corp. v. McGahan*, 823 P.2d 622, 631 (Alaska 1991); *Clark v. Galaxy Apartments*, 427 N.W.2d 723, 726 (Minn. Ct. App. 1988); *Pugh v. Cook*, 153 Ariz. 246, 248, 735 P.2d 856, 858 (Ariz. Ct. App. 1987).

[¶16] Having found the Wheeldons could use their land without the claimed easement, the court properly applied the burden/benefit analysis cited above. *See O'Hare*, ¶¶ 31–34, 458 P.3d at 1238; *Miner*, ¶¶ 49–50, 317 P.3d at 1140; *Hansuld II*, ¶¶ 12–13, 245 P.3d at 298; *Shirran*, 987 P.2d at 145. It analyzed "whether the expense of pursuing an alternative to the easement is disproportionate to the burden on the servient estate of implying an easement across the property." *Hansuld II*, ¶ 12, 245 P.3d at 298. In doing so, the court identified several evidentiary problems with the Wheeldons' case.

[¶17] We consider those problems, understanding from the record that Elk Feed's proposed alternative sleigh and trail routes were central to trial. The first alternative sleigh route would be adjacent to the Wheeldons' main house on the ranch. The second would follow the existing route but turn around before leaving Tract 5. Elk Feed identified various trail route alternatives as examples, rather than an exhaustive list of options. Some would

require the Wheeldons to access Forest Service trails—which they had a permit to use—via their dirt road (Horse Creek Road) rather than Tract 2. On direct exam by Elk Feed, Mr. Wheeldon identified several more alternatives. For example, the current two-hour route could be converted to a four-hour route.

[¶18] In their case-in-chief, the Wheeldons called four witnesses.[5] The elk feeding grounds manager testified about Game & Fish employees' regular use of the dirt road through the ranch. A trail ride expert identified potential problems with Elk Feed's proposed alternative trail routes, opining that the current route was best. Mrs. Wheeldon provided background about the ranch and then discussed Tract 2, recent ranch revenue, the permit to use Forest Service trails, and concerns about the alternative routes. Coby mainly discussed potential problems with the alternative sleigh routes, but he also addressed some matters related to Tract 2. The Wheeldons introduced documents related to the real estate transactions discussed above, along with the ranch's balance sheets and profit/loss records for 2014, 2015, and 2016.

[¶19] Specifically as to sleigh rides, the Wheeldons suggested they had to use Tract 2 to view the elk (the sleigh ride's main attraction) on adjacent Game & Fish property. In addition, they opposed the first alternative route because it would impact their septic tank, require relocation of a satellite dish, not be as scenic, and not allow room for sleighs to pass each other. They opposed the second because it would require them to construct a turnaround, install guardrails, and widen the road; it might also limit the number of sleighs they could operate each night. As to trail rides, the Wheeldons opposed any alternative involving their dirt road, believing it presented safety concerns (traffic would "spook" the horses), they would need to add a "tail guide," and the dirt road would diminish the ride quality and thus lower the amount they could charge guests for four-hour rides.

[¶20] The district court separately addressed each ride type. It determined that the Wheeldons failed to prove necessity for an implied easement for sleigh rides primarily because alternative routes were available and the Wheeldons presented very little information about how much an alternative(s) would cost. And the financial information they did present was not "related to the price of sleigh rides or the costs of improvements in 2007[.]" Accordingly, the court was left with only "a generalized comparison of current impacts." Moreover, testimony "firmly established" the elk were fed, and thereby viewed, adjacent to the Wheeldons' property, not Elk Feed's.

[¶21] The court reached a similar conclusion about the trail rides. Available alternatives required no construction, further infrastructure, or additional staff, and the Wheeldons "provided very few facts regarding the financial impact of using alternatives." The testimony they did provide "was not always credible" and did not pertain to 2007. The court did not consider the Wheeldons' concerns about using the dirt road because they

---

[5] In rebuttal, the Wheeldons called one witness to address a matter unrelated to necessity.

"granted [Game & Fish] an express easement to use that road in 2014, well after the 2007 transfer of Tract 2 to their son." And the court found it noteworthy that the Wheeldons relied on their Forest Service permit as a basis for the alleged easement, but they did not present a 2007 permit or call a Forest Service employee to testify.

[¶22] The Wheeldons do not address these evidentiary deficiencies. Instead, they argue that when a "less exacting" reasonable necessity standard is applied, their continued use of the claimed easement before and after giving Coby Tract 2 demonstrates the claimed easement is reasonably necessary for the convenient and comfortable enjoyment of their property. Continued use is not the same as reasonable necessity. *See, e.g.*, *Miner*, ¶ 49, 317 P.3d at 1140. From our record review, not only do we conclude that the court applied the correct necessity standard, we also agree that the Wheeldons failed to prove necessity existed at the time of severance. *See id.* ¶ 35, 317 P.3d at 1136.

## II. *The district court did not determine that Elk Feed is a bona fide purchaser deserving the protections afforded that status, and the court's bona fide purchaser references were not pertinent to the necessity analysis.*

[¶23] After finding and concluding that the Wheeldons failed to carry their burden to prove necessity, the court stated that its conclusion "align[ed] with some of the more recent principles of implied easement law." First, the court looked at factors the Restatement (Third) of Property (Servitudes) § 2.11 (2000) suggests "enter into the determination whether a servitude should be implied." In the course of applying the various factors, the court characterized Elk Feed as "a bona fide purchaser, who conducted due diligence with respect to title work and recorded easements." Second, the court looked at factors the Restatement (First) of Property § 476 states are important "[i]n determining whether the circumstances under which a conveyance of land is made imply an easement[.]" In the course of applying those various factors, it referred to Mr. Boerschig as a bona fide purchaser.

[¶24] The Wheeldons argue the characterization of Elk Feed as a bona fide purchaser is contrary to the great weight of the evidence and is clearly erroneous. They maintain that Elk Feed could not have been a bona fide purchaser because it had actual and inquiry notice of the implied easement claim before purchasing the property. Accordingly, they contend Elk Feed does not deserve the protections that Wyo. Stat. Ann. § 34-1-120[6] and the

---

[6] The statute provides: "Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded." Wyo. Stat. Ann. § 34-1-120 (LexisNexis 2019). To prevail in a contest under this statute, the purchaser must show he has "the status of a 'bona fide purchaser,' which is: (1) a purchaser in good faith; (2) for a valuable consideration, not by gift; (3) with no actual, constructive or inquiry notice of any alleged or real infirmities in the title; and (4) who would be prejudiced by the cancellation or

8

common law afford a bona fide purchaser, and that such status cannot be used to defeat their claim.

[¶25] This argument is misplaced because the district court did not conclude that Elk Feed was entitled to the protections of Wyo. Stat. Ann. § 34-1-120. The statute had no application. Elk Feed never relied on such protections or raised the statute as a defense. The court did not cite the statute in its order. Indeed, Elk Feed never disputed that its sole member, Mr. Boerschig, had actual notice of the implied easement claim before he purchased the property, and the court's order acknowledged this. The court nowhere linked its bona fide purchaser statements to § 34-1-120, much less denied the Wheeldons' implied easement claim on that basis. The court denied the Wheeldons' claim because they failed to prove necessity. The bona fide purchaser references simply were not pertinent to that analysis.

## *CONCLUSION*

[¶26] The district court did not apply the incorrect standard to determine necessity. Nor did it find that Elk Feed is a bona fide purchaser entitled to statutory and common law protections. Any references to bona fide purchaser status were not pertinent to the district court's necessity ruling. We affirm.

---

reformation." *Bentley v. Dir. of Off. of State Lands & Invs.*, 2007 WY 94, ¶ 40, 160 P.3d 1109, 1120 (Wyo. 2007) (citation omitted).