Ann Paula SCHOTT, Appellant
(Plaintiff),

v.

Charles W. MILLER and Susan D.
Miller, Appellees (Defendants).

No. 96–296.

Supreme Court of Wyoming.

Aug. 7, 1997.

J. Patrick Hand of Hand & Campbell, P.C., Douglas, for Appellant.

Charles S. Chapin of Crowell & Chapin, P.C., Casper, for Appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Ann Schott appeals from the summary judgment which was entered in favor of Appellees Charles Miller and Susan Miller.

We affirm.

### ISSUES

Schott presents three issues on appeal:

A. Did the District Court err in granting summary judgment to Appellees?

B. Having received and heard arguments upon all of the matters contained in the file and depositions of the parties, without objection from the Court nor from Appellee[s], did the District Court err in refusing to allow the filing of said materials and depositions as part of the record?

C. Does the Order granting Summary Judgment go beyond the decision letter and rulings or findings of the District Court?

### FACTS

Schott acquired certain rural property in 1976 which was located in Natrona County. Prior to obtaining title to the property, she entered into a right-of-way agreement with Natrona County wherein Natrona County allowed her to place a water well and pipelines on land which was designated as a county road. The agreement provided in relevant part:

THIRD: The Board [of County Commissioners] reserves the right to use, occupy and enjoy its right-of-way, in such manner and at such times as it shall desire. If any such use shall at any time reasonab[ly] necessitate any change in location or manner ,of [use] of said improvements, or any part thereof, such change or alteration shall be made by ... Schott, at the sole expense of ... Schott, or upon the demand of the Board through the County Highway Superintendent, and neither the Board nor the County of Natrona shall be liable to ... Schott on account thereof, or on account of any damage growing out of any use which the County of Natrona or the Board, or either of them, may make of its county road right-of-way.

FOURTH: The County of Natrona and the Board, for the purpose of this right-of-way, hereby disclaim any representation or implication that it retains any title in any county road right-of-way other than a perpetual easement for road purposes for so much land as described by the instrument conveying such easement and f[u]rther disclaims any interest in and to the well located pursuant hereto except as herein specifically set forth.

... Schott accepts notice and agrees that any expenses or damages incurred by ... Schott t[hr]ough the abandonment, removal, reconstruction or alteration of any county road incurred by ... Schott at no expense whatsoever to the Board or to the County of Natrona.

. . . .

SIXTH: That this right-of-way shall be revocable by the Board in its discretion and after six month[s'] written notice to ... Schott.

SEVENTH: The term of this right-of-way shall be for ninety-nine years from and after this date and shall be thereafter renewable by ... Schott or her heirs, assigns or personal representatives upon such terms and conditions as may be then negotiated between the parties.

Schott constructed the well and put the water to beneficial use.

In 1990, the Millers acquired title to property that adjoined Schott's property and that was traversed by the county road on which Schott's well and pipelines were located. In 1992, Natrona County vacated the portion of

the county road where the well and a portion of the pipelines were located and quitclaimed its interest in that land to Susan Miller. It did not reserve Schott's right-of-way in the resolution vacating the road or in the quitclaim deed.

On May 24, 1995, the Millers notified Schott that they were exercising their right under the terms of the right-of-way agreement to revoke her right-of-way. In response to the notice, Schott filed an action in the district court, asserting that she had an interest in the property over which the vacated road passed for the purposes of maintaining and operating her well and pipelines. She claimed that she had an interest in the property by virtue of adverse possession and under the terms of the agreement with Natrona County.

The Millers filed an answer and a counterclaim. They asked the district court to confirm their title to the property and to order Schott to remove her well and pipelines from their property or to sell the equipment to them. The Millers subsequently filed a motion for a summary judgment.

The district court held a hearing on the Millers' summary judgment motion. During that hearing, Schott apparently relied on excerpts from the parties' depositions in making her arguments. She requested that the deposition transcripts be included in the record; however, the district court denied her request.

After the hearing had concluded, the district court issued a decision letter in which it found that no genuine issue of material fact existed and that the Millers were entitled to have a judgment as a matter of law. The district court, therefore, granted the Millers' motion for a summary judgment. Schott appealed to this Court.

## STANDARD OF REVIEW

■ A summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law.

*Garcia v. Lawson,* 928 P.2d 1164, 1166 (Wyo. 1996); *see also* W.R.C.P. 56(c). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *JCI v. TL By TL (Paternity of TS),* 917 P.2d 183, 185 (Wyo. 1996). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Scott v. Scott,* 918 P.2d 198, 199 (Wyo.1996). We do not accord any deference to the district court's decisions on issues of law. *Koopman By and Through Koopman v. Fremont County School District,* 911 P.2d 1049, 1051 (Wyo.1996).

## DISCUSSION

■ Schott contends that the district court erred by granting the Millers' motion for a summary judgment.[1] She argues that Natrona County improperly vacated the road. The district court concluded that Schott could not assert this claim because Natrona County was not joined as a party in the lawsuit.

■ This Court has stated that, after a county has established a public road, the public has a vested right to use the road and that the county cannot vacate or abandon the road unless it follows the appropriate statutory procedures. *Sare v. Sheridan County Board of County Commissioners,* 784 P.2d 593, 595 (Wyo.1989); *Board of County Commissioners, Carbon County v. White,* 547 P.2d 1195, 1198 (Wyo.1976). When a party attempts to collaterally attack the validity of the proceedings which established or vacated a road or highway, however, the board of county commissioners is entitled to be given the presumption that the proceedings were valid. *See Sheridan County v. Spiro,* 697 P.2d 290, 295 (Wyo.1985). Accordingly, the county is a necessary party in an action in which the propriety of the county's proceedings is at issue. *See id.; White,* 547 P.2d at

---

**1.** Schott does not make a separate or distinct argument concerning her third issue in which she claimed that the summary judgment order went beyond the district court's decision letter and findings. We will not, therefore, address that issue individually.

1198. The district court was, therefore, correct when it concluded that the issue of whether Natrona County had followed the procedures for vacating the road was not properly before it because Natrona County had not been joined as a party to the lawsuit.

We consider next what effect the vacation of the county road had upon Schott's right-of-way.[2] Schott argues that her right-of-way continued to exist after the road was vacated.

■ W.S. 24–3–126(c)(i) provides that, upon proper vacation of a public road, "all title and interest . . . to the highway right-of-way shall pass to and vest in the present adjacent landowner." Although this statutory section specifically refers to only state highways, the rule embodied in the language is generally accepted. If the public has an easement on the land occupied by a highway, the title reverts to the fee owners upon vacation of the highway, and exclusive possession of the land is restored to the owners. 39 AM.JUR.2D *Highways, Streets, and Bridges* § 184 (1968). The rule, therefore, applies to county roads as well.

The legislature has, however, statutorily mandated that an abandonment or vacation of a road will not affect certain rights. Corporations may continue to operate and maintain facilities associated with public utilities on vacated or abandoned roads. *See* W.S. 24–3–126(c), 1–26–813.[3] Counties also have the right to reserve access rights for land-owners when they change the designation of a road from public to private. W.S. 24–3–101(c).[4] Since the legislature provided that all title and interest to the vacated portion of a county road reverts to the adjacent landowner subject to only a few designated exceptions, it follows that any other special rights-of-way, licenses, or privileges which a county has granted to individuals would be extinguished upon vacation of the road and relinquishment of the public's interest in the road. W.S. 24–3–126(c), –101(c).

■ In this case, Natrona County granted a right-of-way to Schott for the construction and maintenance of her water well. The right-of-way agreement clearly informed Schott that Natrona County held a mere easement in the property for public road purposes. Schott did not object to Natrona County vacating the road, and Natrona County did not, in its vacation resolution or in the quitclaim deed to the Millers, refer to Schott's right-of-way. Additionally, Schott does not operate a public utility. We conclude, therefore, that the exclusive title and interest to the property passed to the Millers and that Schott's right-of-way was extinguished when Natrona County vacated the road and relinquished its interest in the property without reserving the right-of-way.

■ Further, under the clear and unambiguous terms of the right-of-way agreement which Schott entered into with Natrona

---

2. Schott does not challenge the district court's decision that she was not entitled to have an easement on the basis of adverse possession. Schott has, therefore, conceded that issue, and the district court's ruling on the matter stands. *Hermreck v. United Parcel Service, Inc.*, 938 P.2d 863, 865 (Wyo.1997).

3. W.S. 24–3–126(c) provides in pertinent part:
   (c) . . . Abandonment or relinquishment shall not affect the rights of corporations or their successors in interest acquired under the provisions of W.S. 1–26–813 to continue the operation and maintenance of transmission and distribution lines constructed upon the right-of-way and shall not affect the rights of any corporation or successors in interest to continue to maintain any facility lawfully in the highway right-of-way at the time of any abandonment or relinquishment. Corporations shall have the right to go upon these lands for the purposes associated with maintenance or use of their facility.

W.S. 1–26–813 provides in pertinent part:
   Corporations authorized to do business in this state for the purpose of constructing, maintaining and operating a public utility may set their fixtures and facilities along, across or under any of the public roads, streets and waters of this state in such manner as not to inconvenience the public in their use.

4. W.S. 24–3–101(c) provides:
   (c) In altering any county highway under this article or any other road dedicated by recorded plat as a public road, a board of county commissioners may change the designation of any road to a private road. If a board alters any road, it shall reserve the access rights of the area landowners and permit governmental agencies to retain access to that road for performing essential public services. It may also designate a nongovernmental entity to be responsible for the maintenance of any road altered pursuant to this section.

County, the right-of-way was revocable at Natrona County's discretion provided that Natrona County gave Schott six months' notice. The Millers, as successors to Natrona County's interest in the property, followed the revocation procedure given in the agreement. Any interest that Schott had in the property was, therefore, effectively terminated. Schott spends a great deal of space and effort in her brief in arguing that the Millers had notice that her well existed when they purchased their property. Whether or not the Millers had notice that the well and pipelines existed is irrelevant because the right-of-way was terminated upon vacation of the road and under the express terms of the right-of-way agreement.

Schott also takes issue with the district court's refusal to allow the deposition transcripts to be included in the record. She does not, however, explain the significance of the transcripts or how she was prejudiced by the district court's refusal to allow them to be included in the court file. No genuine issue of material fact existed in this case, and Schott has not convinced us that the inclusion of the deposition transcripts was necessary. Any error which may have been committed by the district court in failing to allow the deposition transcripts to be included in the record was, therefore, harmless. W.R.C.P. 61; W.R.A.P. 9.04.

Affirmed.