2003 WY 165

**William S. HANSULD and Tia J. Hansuld, husband and wife, Appellants (Plaintiffs),**

v.

**LARIAT DIESEL CORPORATION, a Wyoming corporation, Appellee (Defendant).**

**No. 02–258.**

Supreme Court of Wyoming.

Dec. 23, 2003.

Representing Appellant: William W. Harden and Larry W. Harrington, Casper, Wyoming.

Representing Appellee: Thomas M. Hogan and Donald L. Painter, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1]   Appellants William S. Hansuld and Tia J. Hansuld own property adjoining that of Appellant Lariat Diesel Corporation. Shortly after Hansulds purchased their property, they denied access to Lariat and erected a fence to prevent use.  Hansulds filed a quiet title and declaratory judgment suit, and Lariat counterclaimed to establish its rights. Following a bench trial, the district court ruled that Lariat had an implied easement for access.  Hansulds appeal that ruling.

[¶ 2]   We affirm.

## ISSUES

[¶ 3]   Hansulds provide this statement of the issues:

1.   Did the LLC have an interest in the State—right-of-way that would create a "unity of ownership" with the 3100 property when Lariat purchased the 3100 property?

2.   Whether or not the trial court erred in ordering an implied easement over the abandoned State right-of-way, when unity of ownership was missing between the 3100 property and the abandoned State right-of-way?

3.   Did the court err in granting an implied easement for ingress and egress across the 3110 property when that property is not contiguous to the East Yellowstone Highway?

Lariat rephrases the issue to state:

1.   Did the trial court err in granting Lariat an implied access easement across the Appellants' 3110 East Yellowstone property?

2.   Did the trial court err in granting Lariat an implied access easement across the Appellants' abandoned State right-of-way

contiguous to their 3110 East Yellowstone property?

3. Did the trial court err in determining the extent and permitted uses of the easement across the Appellants' property?

## FACTS

[¶ 4] The district court approved a statement of facts in lieu of a transcript, which we have summarized. Originally, Chapin and Ratcliff, LLC (LLC) owned both 3100 East Yellowstone and 3110 East Yellowstone, Natrona County, Wyoming. In 1995, LLC owner, Hardy Ratcliff, approached Lariat owner Marvin Piel (Piel) with the thought of selling Lariat both properties located at 3100 and 3110 East Yellowstone. Lariat was interested in 3100 East Yellowstone only and did not require the other lot.

[¶ 5] The parties agreed that if Lariat would purchase 3100 East Yellowstone, Lariat would be allowed access over the 3110 East Yellowstone lot for its truck access. Access across 3110 East Yellowstone was key to Lariat's business located at 3100 East Yellowstone. Without it, Lariat could not get heavy trucks in and out of its shop without great difficulty. On July 2, 1995, the LLC sold 3100 East Yellowstone to Lariat.

[¶ 6] A little over a year later, on August 5, 1996, the LLC and Gary L. Petley (Petley) entered into a Purchase Agreement concerning the property adjoining Lariat, 3110 East Yellowstone. American Title Company issued a title commitment for the property on August 19, 1996.

[¶ 7] Some days before the closing date of the sale of 3110 East Yellowstone to Petley, the LLC proposed at a meeting with Lariat that it would give Lariat a formal written ingress and egress easement for customers crossing 3110 East Yellowstone in exchange for Lariat's giving the LLC a sewer "easement" across the Lariat property for the sewer line servicing the adjoining property at 3110 East Yellowstone. Mr. Petley was invited to this meeting because this "reciprocal easement" arrangement would both burden and benefit 3110 East Yellowstone and his proposed purchase. No other consideration was exchanged. Petley understood the arrangement and had no problems with it.

[¶ 8] After the meeting and before the closing on 3110 East Yellowstone, the LLC executed and filed an "Access Agreement" that contained a legal description granting egress and ingress over the southerly 100 feet of 3110 East Yellowstone. The Natrona County Clerk filed the "Sewer Easement" at 4:00 p.m. and the "Access Agreement" at 4:02 p.m. on August 30, 1996. Also on that same day, the Petley purchase of 3110 East Yellowstone closed, and the warranty deed was filed with the Natrona County Clerk at 10:41 a.m. The title policy that issued a few days after the closing included the recorded access agreement in the policy for informational purposes.

[¶ 9] Petley sold 3110 Yellowstone to Wildcat Whackers on June 25, 1999. Later, Wildcat Whackers listed it for sale with a realtor who noticed the access agreement and consulted an attorney. In the course of soliciting Lariat to buy the property, the realtor indicated to it that the realtor believed the easement was void because it was outside of the chain of title. Lariat summarily rejected the offer to purchase and told the realtor that it believed the easement was valid and enforceable. That same realtor advised Hansulds of the easement, and Hansulds purchased the property on October 31, 2001.

[¶ 10] Immediately after purchasing the property at 3110 East Yellowstone, Hansulds notified Lariat that any future access across 3110 East Yellowstone would be denied. Hansulds then constructed a chain link fence along the property line between 3110 and 3100 East Yellowstone and along the East Yellowstone frontage to insure that Lariat had no access across 3110 East Yellowstone. Hansulds filed suit to quiet title and sought a declaratory judgment on the validity of the access agreement. Summary judgment motions were denied, and the case proceeded to a bench trial.

[¶ 11] After suit was filed, East Yellowstone Highway, the access road to both parties' property, was straightened, resulting in the abandonment of a portion of the right-of-way by the State of Wyoming. The "Resolu-

tion for Abandonment" was filed with the county clerk on September 20, 2001. Wildcat Whackers conveyed the abandoned property to Hansulds by quitclaim deed. The land acquired by Hansulds is approximately forty feet wide and lies between Hansulds' southern boundary and Yellowstone Highway.

[¶ 12] The district court found that the abandonment added property to the southerly parts of both Hansulds' and Lariat's properties. The district court determined that the LLC intended to convey an easement for access to the 3100 property and held that an implied easement existed. Hansulds appeal.

## DISCUSSION

### Standard of Review

[¶ 13] When a trial court in a bench trial makes express findings of fact and conclusions of law, we review the factual determinations under a clearly erroneous standard and the legal conclusions de novo. *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo.1999). The parties do not dispute the findings of fact, and we review de novo the district court's resolution of this dispute.

### Type of Easement

[¶ 14] The district court made no findings as to whether an express easement had been created by virtue of the access agreement filed a few hours after the warranty deed, and the parties speculate whether the district court's silence indicates that the access agreement is void. The district court also made no findings as to whether the LLC could grant an express easement across property that was owned by the State and later abandoned and deeded to the parties. The Handsulds do not dispute any factual findings by the district court; however, they do contend that Wyo. Stat. Ann. § 24–3–126 [1] prevented the parties from agreeing to an easement at inception and the district court cannot now imply an easement. The district

court limited its ruling to deciding that at severance, the common owner and Lariat intended to provide for access and created an implied easement. Although we consider the effect of both the express access agreement and the state's role in this matter, that consideration is limited to whether either are of any consequence in determining that an implied easement was created.

### Implied Easements

[¶ 15] Under certain circumstances, Wyoming will recognize an implied easement across another person's property. *In re Estate of Shirran*, 987 P.2d 140, 142 (Wyo.1999) (citing *Beaudoin v. Kibbie*, 905 P.2d 939, 941–42 (Wyo.1995); *Corbett v. Whitney*, 603 P.2d 1291, 1293 (Wyo.1979)). The elements which must be satisfied in order to establish an implied easement are: (1) common ownership followed by a conveyance separating the unified ownership; (2) before severance, the common owner used part of the property for the benefit of the other part, a use that was apparent, obvious, and continuous; and (3) the claimed easement is necessary and beneficial to the enjoyment of the parcel previously benefitted. *Id.* (quoting *Beaudoin*, 905 P.2d at 941–42).

[¶ 16] The creation of easements by implication is an attempt to infer the intention of the parties to a conveyance of land. *Gray v. Norwest Bank Wyoming, N.A.*, 984 P.2d 1088, 1091 (Wyo.1999). "This inference drawn from the circumstances surrounding the conveyance alone represents an attempt to determine the intention of parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves." *Id.* (citing *Corbett*, 603 P.2d at 1293). "The doctrine of implied easements was created for courts to examine the particular facts suggesting the intent of the parties to a

---

1. The statute provides in pertinent part:

(a) The transportation commission may abandon or relinquish any portion of state highways upon the reconstruction or relocation of any portion of an existing state highway.

\* \* \* \*

(i) Upon the entry of the resolution of abandonment in the minute record of the commission, all title and interest, except as herein provided, to the highway right-of-way shall pass to and vest in the present adjacent landowner according to the portion contributed by adjacent landowner or his predecessor in interest[.]

conveyance and determine if the parties omitted granting an easement reasonably necessary for the use and enjoyment of the property." *Id.* The implied easement does not arise where the parties to the conveyance expressly agree otherwise or where proof of its elements is not established. *Id.*

[¶ 17] In applying the doctrine of implied easements, we must determine the parties' intent at the time that the unified property was severed from a single possessory interest by conveyance from the common owner to a grantee. In this particular case, LLC, the common owner, severed the property by conveying part of it to Lariat. That conveyance included an express agreement between the parties to permit access. The express intent of these parties controls and, if all elements are satisfied, requires the creation of an implied easement based upon previous use.

[¶ 18] Hansulds contend that this element is not met for two reasons: first, a statute prevented the LLC from legally granting an easement across property owned by the State and, secondly, they further claim that the State's abandonment of the property vacated any rights that Lariat may have had. The first reason need not be considered because we are not addressing whether the LLC legally granted an express easement for property not its own. The district court did not decide whether the access agreement was valid or void; instead, it resolved the issue by deciding that an implied easement was created. In other words, the express agreement is of no consequence.

[¶ 19] What is of consequence is that at the time that the parties expressed their intent in the access agreement, both agreed that the access would involve the property owned by each. The later changes in the condition of the properties are irrelevant because our general rule is that we presume that the parties contracted for the transfer of the property with a view to the condition of the property as it actually was at the time of the transaction. *Shirran*, 987 P.2d at 143. There was no error by the district court on this issue.

[¶ 20] Hansulds base their second contention on our resolution of a similarly posed question in *Schott v. Miller*, 943 P.2d 1174 (Wyo.1997). In that case, Schott entered into an agreement with the county that allowed her to place a water well and pipelines on a county road. *Id.* at 1175. Later, the county vacated that part of the county road and quitclaimed its interest in that land to the adjacent property owner and did not reserve Schott's interest. The adjacent property owner revoked Schott's right-of-way. *Id.* at 1175–76. We held that exclusive title passed, and Schott's right-of-way interest had been extinguished. *Id.* at 1177. Hansulds acknowledge the obvious distinction between the two cases, that Lariat, unlike Schott, had no agreement with a governmental entity. Nonetheless, Hansulds assert that *Schott's* holding, that a government abandonment results in extinguishing all rights that are not reserved, must apply in this case.

[¶ 21] *Schott's* holding was based upon resolution of an express easement that included a procedure to permit revocation of the right-of-way. The new owners followed that revocation procedure and extinguished Schott's right-of-way. No issue of implied easement was presented or discussed. Hansulds present no argument that *Schott* intended to hold that an implied easement cannot be applied under these different facts and we do not further consider it.

[¶ 22] Whether the effect of the state's abandonment has destroyed the unity of ownership that is a necessary element to establishing an implied easement must be answered. As provided for by the statute, abandoned state highway property reverted to the present owners resulting in added property to both parcels that had not been owned by the LLC at the time of severance. Hansulds were not aware of the abandonment, and the property was not added until Hansulds had denied access and begun litigation. Under these rare circumstances, we believe that the district court properly concluded that the state property had not altered any of the facts establishing an implied easement. At the time of the severance, the

LLC intended to benefit Lariat's property with an access agreement, Lariat properly used the property for access, and today, the property would benefit from the continued access granted to it by the common owner. In other words, the state's role was of no consequence. The record supports this conclusion, and we find no error in the district court's ruling.

[¶ 23]   The district court's order granting judgment to Lariat is affirmed.