# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 31

### OCTOBER TERM, A.D. 2019

### March 3, 2020

CATHERINE K. O'HARE,

Appellant
(Defendant),

v.

CHRISTOPHER HULME,

Appellee
(Plaintiff).

CHRISTOPHER HULME,

Appellant
(Plaintiff),

v.

CATHERINE K. O'HARE,

Appellee
(Defendant).

S-19-0093, S-19-0094

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Catherine K. O'Hare:*
　　*Mitchell H. Edwards, Nicholas & Tangeman, LLC, Laramie, Wyoming. Argument by Mr. Edwards.*

*Representing Christopher Hulme:*
　　*Nicholas A. Norris, Lubnau Law Office, P.C., Gillette, Wyoming. Argument by Mr. Norris.*



*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]     This dispute concerns the property boundary between two residential lots connected by a shared driveway in Rawlins, Wyoming.  Christopher Hulme filed suit against Catherine "Cali" O'Hare, claiming that he had adversely possessed a 30-inch strip of her driveway, that he had an easement over the entire driveway, and that she had intentionally trespassed on the adversely possessed portion of his property by constructing a fence on it.  Ms. O'Hare asserted various counterclaims.  The parties filed serial motions for summary judgment, and the district court granted summary judgment in favor of Mr. Hulme on his adverse possession claim, and in favor of Ms. O'Hare on Mr. Hulme's prescriptive easement and implied easement claims.[1]  After the district court denied Ms. O'Hare's motion to reconsider its adverse possession decision, the remaining issues proceeded to a bench trial.  The parties cross appeal the decisions on their first motions for summary judgment, the denied motion for reconsideration, and the bench trial.  We reverse in part and remand.

## ISSUES

[¶2]     The parties raise a variety of issues that we consolidate and rephrase:[2]

> 1.  Did the district court err in granting summary judgment in favor of Mr. Hulme on his adverse possession claim?
>
> 2.  Did the district court err in granting summary judgment in favor of Ms. O'Hare on Mr. Hulme's prescriptive easement claim?
>
> 3.  Did the district court err in granting summary judgment in favor of Ms. O'Hare on Mr. Hulme's implied easement claim?

## FACTS

The Driveway

[¶3]     The property line between 1017 8th Street, owned by Catherine "Cali" O'Hare, and 1011 8th Street, owned by Christopher Hulme, runs down a concrete driveway that is 18.2 feet wide at its widest point.  The property line follows a visible concrete pour seam and

---

[1] Other issues were resolved via summary judgment and are not part of this appeal.
[2] Ms. O'Hare also challenges the award of damages resulting from her asserted trespass onto Mr. Hulme's property and the denial of her motion for reconsideration.  Because the trespass derived from the court's decision that Mr. Hulme had adversely possessed a portion of Ms. O'Hare's driveway, and because we reverse that decision, we do not address the propriety of damages.  Likewise, because we reverse the court's decision on adverse possession, we need not address its refusal to reconsider that decision.

puts 10.1 feet of the driveway on Ms. O'Hare's side, leaving 8.1 feet of driveway on Mr. Hulme's. Mr. Hulme's side of the driveway leads to a large garage/shop that he uses to park and work on various vehicles and pieces of equipment. For many years, a set of clothesline posts stood approximately 30 inches to the north of the concrete seam on Ms. O'Hare's lot. Throughout this dispute, Mr. Hulme has asserted that he, his predecessors in interest, and the neighboring owners of the 1017 property had always treated the clothesline posts as the true property boundary.



**Exhibit A to Decision Letter**
**(For Demonstrative Purposes Only; Not to Scale)**

1981-2003: "We were just neighborly and we shared it."

[¶4]    The clothesline posts stood on what is now Ms. O'Hare's lot when Mr. Hulme first lived at 1011 8th Street as a young child. Mr. Hulme moved into the property with his mother in 1981. The two of them resided there from 1981 until 2003, as did Rick Hulme[3] from 1986 to 1996. Mr. Hulme testified that both his mother and their 1017 neighbor, Jimmy Bentsen, used to hang clothes on the clothesline between the posts. He also testified that the posts served as "the divider for the driveway" and that his 1017 neighbors "always parked to the north of the[] poles, and [he and his mother] always parked to the south." Between 1981 and 2003, he and his family used the driveway to the south of the poles for parking multiple vehicles and various trailers and campers, accessing the garage and the backyard, and entering and exiting the property. They maintained the entire driveway by

---

[3] We refer to Rick Hulme as "Rick" in the remainder of this opinion to avoid confusing him with Christopher Hulme, whom we refer to as "Mr. Hulme."

2

shoveling, clearing out leaves, and mowing a strip of grass on the 1017 side of the driveway. They also used the 1017 side of the driveway to maneuver around other vehicles parked on their side in order to avoid moving and reparking every vehicle on their side of the driveway whenever they exited and entered it. Jimmy Bentsen used the Hulme's side of the driveway for the same purpose. Mr. Hulme testified that there was never any agreement as to how his family and the neighbors used the driveway between 1981 and 2003; rather, "It was neighborly. We were just neighborly and we shared it."

[¶5]    Rick similarly attested that he and Mr. Hulme's mother "owned the [1011] property up and to the two (2) clothesline posts that split the driveway and we utilized it as if it was ours" and "hung rugs and clothes out on that line." Although he could not "remember any specific conversations" with Jimmy Bentsen, Rick asserted that "it was absolutely understood that the property boundary ran the length of the driveway in line with the two posts." According to Rick, he, Mr. Hulme, and Mr. Hulme's mother "utilized the driveway right up against the two (2) posts," "stored things there, kept a garbage can there, parked our vehicles, entered and exited vehicles in that space and drove in and out from our garage," and "occasionally even parked [a] semi-tractor . . . with a sleeper in the driveway." Like Mr. Hulme, Rick attested that Jimmy Bentsen "occasionally" used the Hulme's side of the driveway to drive around vehicles parked on his own side "just like we would use his side of the driveway to drive around a vehicle parked" on their side. Finally, Rick attested that "Jimmy Bentsen never gave [them] permission, nor did [they] have any agreement, about our use of the driveway."

2004-2006 Interlude

[¶6]    Mr. Hulme moved out of 1011 8th Street sometime in 2003. His mother moved out in 2004 and defaulted on her mortgages around that time. In March 2006, another longtime-8th Street neighbor, Elnagrace Watson, purchased the 1011 property at a foreclosure sale. Ms. Watson allowed Mr. Hulme to move into the property immediately after she purchased it and then deeded it to him in August 2006 when he was able to secure a loan to pay her back the amount of her bid at the foreclosure sale. In sum, the property was vacant from sometime in 2004 when Mr. Hulme's mother moved out, to sometime in 2006 when he moved back in.[4]

---

[4] Mr. Hulme repeatedly testified that he moved back in to 1011 8th Street in February 2006; however, the district court found that he could not have moved back in until March 2006 because public land records showed that Ms. Watson purchased the house in March 2006. For her part, Ms. O'Hare argues that the 2006 to 2016 period of possession could not have begun until August 2006. We need not resolve any discrepancy concerning the time that Mr. Hulme regained possession of the 1011 property because our analyses of the adverse possession and prescriptive easement claims do not rely on continuity of possession or use.

3

<u>2006-2016: "until Cali O'Hare, I have got along with all of my neighbors."</u>

[¶7]    Not long after Mr. Hulme moved back in, Jimmy Bentsen died, leaving 1017 8th Street to two of his children.  They gave Mr. Hulme permission to store a large dumpster, a trailer, and a camper on the 1017 side of the driveway while the property was vacant.  His things were still there when Eric Boles purchased the property in February 2008.  Mr. Hulme told Mr. Boles that he would move his things off the 1017 side of the driveway before Mr. Boles moved in, explaining that "anything north of the poles [was his] to park."  After Mr. Boles moved in, Mr. Hulme testified that he continued to use his side of the driveway up to the poles as his family had between 1981 and 2003: for parking various vehicles and trailers, intermittent storage of lawn furniture, barrels, and buckets, and for ingress and egress onto the property.  Mr. Hulme also continued to maintain the entire driveway by removing snow, blowing leaves, and trimming the grass on the 1017 side of the property.  He testified that he did so because he "was just trying to get along" and that it was "just easier to [plow] the whole driveway" because "you're out there anyway.  . . . And until Cali O'Hare, I have got along with all of my neighbors."  He also continued to use Mr. Boles' side of the driveway to maneuver around vehicles parked on his own side of the driveway.  Mr. Hulme testified that Mr. Boles never stored anything on the driveway south of the poles but that he "may have" occasionally used the driveway south of the poles to maneuver around parked vehicles and that such use would not have bothered him.

[¶8]    The status quo continued until Ms. O'Hare moved in to 1017 8th Street in July 2013.  Ms. O'Hare's father, Donald O'Hare, purchased the property on July 12, 2013, and transferred it to Ms. O'Hare via quitclaim deed the same day.  The day Ms. O'Hare moved into the house, Mr. Hulme told her father that the clothesline posts marked the property line between the two sides of the driveway.  Mr. O'Hare was immediately "skeptical" because the poles were too close to Ms. O'Hare's house to allow access to the rear of the property and because they did not align with the concrete pour seam in the driveway, which he believed was "somewhat typical of property lines.  That they would have a pour seam on the property line versus 2 and a half feet in."  At some point, Mr. O'Hare explained this to Mr. Hulme, who "didn't believe it or want to talk about it."  In October 2013, Mr. O'Hare personally measured his daughter's lot and determined that the property boundary roughly aligned with the concrete pour seam.  Shortly afterwards, he erected a makeshift fence of PVC pipe about two inches north of the seam on his daughter's lot.  Mr. Hulme promptly ran it over with his truck.  The O'Hares called the police, who suggested that they get an official survey of the property.  Mr. O'Hare obtained a survey, which confirmed that the property boundary did not align with the clothesline posts, but rather with the concrete pour seam.

[¶9]    Meanwhile, Mr. Hulme and Ms. O'Hare struggled to get along.  Ms. O'Hare testified that Mr. Hulme antagonized her dogs by throwing rocks at her fence, repeatedly gave her "a menacing look," called her names, and, on one occasion, threw two severed deer legs into her front yard.  After Ms. O'Hare's boyfriend moved in with her in late 2013,

4

her relationship with Mr. Hulme improved somewhat. However, their feud resumed in August 2016. Around that time, Mr. Hulme's family and friends began parking their vehicles at the end of the driveway so as to block Ms. O'Hare from entering and exiting her side of the driveway. Ms. O'Hare's father marked the true property line with florescent paint and put up a "No Trespassing" sign. Mr. Hulme's wife painted over the line. According to Ms. O'Hare, Mrs. Hulme threatened her shortly after that incident. After the alleged threat, Ms. O'Hare had the sheriff serve Mr. Hulme with a "No Trespass Order" and applied for a permit to build a fence along the property line.

[¶10] Toward the end of August 2016, Ms. O'Hare's contractor began constructing a fence along the surveyed property line. To fasten the vertical fence posts into the ground, the contractor drilled multiple holes into the concrete driveway and cemented the posts into the holes. Mr. Hulme testified that, after the fence was completed, he could no longer use the driveway because there was not enough room to open the doors of his truck. He also testified that the fence did not leave enough room for him to drive wider pieces of equipment, such as trailers, to the large garage at the back of his property. He acknowledged, however, that a second garage door leading to the alley that runs behind the property allowed him access to the garage.

Course of Proceedings

[¶11] Mr. Hulme filed a complaint in district court, asserting claims of adverse possession, prescriptive easement, implied easement, trespass, ejectment, and injunctive relief. Specifically, Mr. Hulme claimed to have adversely possessed the disputed area of driveway up to the clothesline posts, and he sought an easement over the entire side of Ms. O'Hare's driveway in order to allow free ingress and egress onto his property. His ejectment and trespass claims asserted that Ms. O'Hare's fence interfered with the use of his property and his easement; that he was "entitled to an order requiring the removal of the fence" and "punitive damages for [Ms. O'Hare's] intentional trespass"; and that he was "irreparably damaged by being denied the quiet enjoyment of his property or the use of his easement and damaged by the incurrence of attorney fees[.]" Ms. O'Hare answered, asserting counterclaims of trespass and intentional infliction of emotional distress, among others. Mr. Hulme moved for a preliminary injunction, asserting that Ms. O'Hare's fence was causing him irreparable injury and seeking its removal. Following a hearing, the district court denied the motion, concluding that preliminary injunctive relief was not appropriate because Mr. Hulme did not make "a clear showing of probable success on the merits or of possible irreparable injury." The court specifically relied on testimony suggesting that use of Ms. O'Hare's driveway up to the clothesline posts was permissive, saying:

> "Use by permission or the absence of objection will not ripen
> into title no matter how long continued." [*Boykin v. Carbon
> Cty. Bd. of Comm'rs*, 2005 WY 158], ¶ 15, 124 P.3d [677,] 682
> [(Wyo. 2005)]. The testimony presented at the hearing

5

suggested all use of the driveway was permissive, at least until the most recent three to four years. On direct examination [Mr. Hulme] commented that before [Ms. O'Hare] moved in, the property owners "were just neighborly and we used [the driveway]," and the property owners . . . would use both halves of the driveway for ingress and egress. On cross-examination, [Mr. Hulme] confirmed that he had previously had express permission to park his camper on the other side of the driveway. In short, [Mr. Hulme, Ms. O'Hare], and their predecessors used all portions of the driveway permissively, each with full knowledge and consent of the others.

(Some alterations in original.)

[¶12]   In April 2017, Mr. Hulme moved for summary judgment on his claims of adverse possession and prescriptive easement. Mr. Hulme relied on two affidavits, his own and Rick Hulme's, to support his assertion that no genuine issues of material fact existed as to those claims. Ms. O'Hare did not respond to Mr. Hulme's motion directly, instead filing her own motion for summary judgment on Mr. Hulme's adverse possession, prescriptive easement, implied easement, trespass, and ejectment claims. She did not file a W.R.C.P. 56.1 Statement with her motion, but attached and cited various documents, including a transcript of the preliminary injunction hearing, to support her motion. Mr. Hulme responded, arguing that Ms. O'Hare's motion should be denied for failing to comply with Rule 56.1 and, alternatively, that it should be denied on its merits.

[¶13]   The district court declined to deny Ms. O'Hare's motion for failure to file a Rule 56.1 Statement, saying that the failure was "not fatal to [her] motion because most of the relevant facts were established by in-court testimony at the preliminary injunction hearing."[5] The court granted Mr. Hulme's motion for summary judgment on his adverse possession claim, concluding:

> Mr. Hulme has presented a *prima facie* case of adverse possession commencing in 1981. Ms. O'Hare has not negated one of the elements in order to rebut the presumption of adverse possession, nor has she raised a genuine issue of material fact in relation to the period of adverse possession from 1981 to 2003. Mr. Hulme is entitled to summary judgment on his adverse possession cause of action. Title of

---

[5] We have held "that in a summary judgment proceeding, a court may consider testimony from prior hearings only if that testimony is transcribed and authenticated" and "submitted with the motion or already filed with the court." *Matthews v. Wyo. Dep't of Agriculture*, 719 P.2d 216, 221-22 (Wyo. 1986). Here, Ms. O'Hare submitted a transcript of the preliminary injunction hearing and relied on it in her motion for summary judgment.

the disputed 30-inch-wide-strip of driveway vested in the Hulmes in 1991 and now rests with Mr. Hulme.

[¶14] As to Mr. Hulme's prescriptive easement claim over the entirety of Ms. O'Hare's side of the driveway, the district court concluded that he could not "establish that his use of the northern side of the shared driveway (Ms. O'Hare's side) for ingress and egress purposes was anything other than permissive," and granted summary judgment on that claim in favor of Ms. O'Hare. Finally, the district court granted summary judgment in favor of Ms. O'Hare on Mr. Hulme's claim of implied easement, concluding that he could not establish that a "common owner used the O'Hare side of the driveway to access the Hulme side of the property" or that the claimed easement was "necessary and beneficial to the enjoyment of the parcel previously benefitted."

[¶15] In November 2018, Ms. O'Hare filed a motion for reconsideration of the court's decision on Mr. Hulme's adverse possession claim, attaching numerous previously unfiled documents to support her argument that material issues of fact existed. The district court denied the motion, concluding it was untimely. The case proceeded to trial on the only issues remaining after additional motions for summary judgment: damages resulting from Ms. O'Hare's trespass onto Mr. Hulme's adversely possessed portion of the driveway and Ms. O'Hare's claim of intentional infliction of emotional distress. The district court awarded Mr. Hulme actual damages of $7,292 for the cost of repairing the driveway and for ten months' loss of use of his portion of the driveway. It declined to award punitive damages. Finally, the court denied Ms. O'Hare's claim of intentional infliction of emotional distress, concluding that she had failed to meet her burden of proof. Both parties timely appealed. Additional facts are discussed below as needed.

### STANDARD OF REVIEW

[¶16] Mr. Hulme makes much of Ms. O'Hare's failure to file a response to his motion for summary judgment or a Rule 56.1 Statement, arguing that this failure requires us to review the district court's decision for an abuse of discretion. Neither Rule 56 nor our precedent support an abuse of discretion standard of review. The party moving for summary judgment has the burden of showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." W.R.C.P. 56(a). We consider whether the movant has met this initial burden de novo and afford no deference to the district court's ruling. *White v. Wheeler*, 2017 WY 146, ¶ 14, 406 P.3d 1241, 1246 (Wyo. 2017) (citing *The Tavern, LLC v. Town of Alpine*, 2017 WY 56, ¶ 46, 395 P.3d 167, 178-79 (Wyo. 2017)). The opposing party has no obligation to respond to the motion with materials beyond the pleadings until the movant has met his initial burden of establishing a *prima facie* case that no genuine issues of material fact exist. *Little Medicine Creek Ranch, Inc. v. D'Elia*, 2019 WY 103, ¶ 14, 450 P.3d 222, 227-28 (Wyo. 2019) (citing *Mantle v. N. Star. Energy & Constr. LLC*, 2019 WY 29, ¶ 110, 437 P.3d 758, 794-95 (Wyo. 2019)). Further, we evaluate the record "from the viewpoint most favorable to the party

7

opposing the motion for summary judgment, giving that party all the favorable inferences which may be drawn from the facts contained in affidavits, depositions, and other materials appearing in the record." *Murdock v. Zier*, 2006 WY 80, ¶ 9, 137 P.3d 147, 150 (Wyo. 2006) (citing *Ballinger v. Thompson*, 2005 WY 101, ¶ 9, 118 P.3d 429, 433 (Wyo. 2005)). "When, as here, we review a grant of summary judgment on an adverse possession claim, we apply the summary judgment standard with 'more exacting scrutiny' because adverse possession claims are inherently fact-intensive." *Little Medicine Creek*, 2019 WY 103, ¶ 15, 450 P.3d at 228 (quoting *White*, 2017 WY 146, ¶ 15, 406 P.3d at 1246).

[¶17]   That said, we review a "'summary judgment in the same light as the district court, using the same materials and following the same standards.'" *Little Medicine Creek*, 2019 WY 103, ¶ 15, 450 P.3d at 228 (quoting *Mantle*, 2019 WY 29, ¶ 110, 437 P.3d at 795).  On appeal, Ms. O'Hare relies heavily on materials and testimony submitted to the district court after it made its decision on the adverse possession claim.  We do not consider those materials in our review. *Toltec Watershed Imp. Dist. v. Johnston*, 717 P.2d 808, 812 (Wyo. 1986) ("Since the district court did not have [documents filed after summary judgment] before it, we cannot consider such documents in our review since we must examine the judgment in the same light as the district court and use the same materials.").

## *DISCUSSION*

## I.    *The district court erred in granting summary judgment in favor of Mr. Hulme on his adverse possession claim*

[¶18]   The district court concluded that Mr. Hulme was entitled to summary judgment on his adverse possession claim.  On our de novo review, we consider whether disputed issues of material fact precluded summary judgment.

[¶19]   "Adverse possession claims are not favored in the law, . . . and 'a presumption in favor of the record title holder exists, unless and until the adverse claimant makes out his *prima facie* case.'" *White*, 2017 WY 146, ¶ 17, 406 P.3d at 1246 (quoting *Hillard v. Marshall*, 888 P.2d 1255, 1259 (Wyo. 1995) and citing *Braunstein v. Robinson Family Ltd. P'ship LLP*, 2010 WY 26, ¶ 19, 226 P.3d 826, 836 (Wyo. 2010)).  To carry its initial burden of establishing a *prima facie* case, the party requesting summary judgment "must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title.  Possession must be for the statutory period, ten years." *Braunstein*, 2010 WY 26, ¶ 17, 226 P.3d at 833) (internal citations omitted).

> A hostile possession or use is one that amounts to an assertion
> of ownership adverse to that of the record owner.  It must be
> so incompatible with or so in defiance of the rights of the true
> owner that an ordinarily prudent owner would be on clear

8

notice that his ownership is in jeopardy, that the claimant *intends* to possess the property as his own, and that the owner should take some action to protect his title. *Graybill v. Lampman*, 2014 WY 100, ¶ 36, 332 P.3d 511, 522 (Wyo. 2014).

*White*, 2017 WY 146, ¶ 17, 406 P.3d at 1247 (alterations omitted) (quoting *Galiher v. Johnson*, 2017 WY 31, ¶ 20, 391 P.3d 1101, 1106 (Wyo. 2017) (*Galiher I*)). Further,

> [b]ecause the requirement of notice is fundamental to a claim of adverse possession, we have held that a claimant cannot establish a *prima facie* case by relying solely on his testimony as to his subjective hostile intent. He must introduce evidence that such intent was objectively made manifest by his observable words or actions.

*Galiher I*, 2017 WY 31, ¶ 21, 391 P.3d at 1106 (citing *Braunstein*, 2010 WY 26, ¶ 19, 226 P.3d at 835; *Turner v. Floyd C. Reno & Sons, Inc.*, 769 P.2d 364, 368 (Wyo. 1989)).

[¶20] If an adverse possession claimant successfully rebuts the presumption in favor of the record title holder by making the required *prima facie* showing, the burden shifts to the record title holder "to explain such possession." *White*, 2017 WY 146, ¶ 18, 406 P.3d at 1247 (quoting *Osuch v. Gunnels*, 2017 WY 49, ¶ 10, 393 P.3d 898, 901 (Wyo. 2017)). Because an adverse possession claimant cannot succeed if his use of the property was permissive, the record title holder can defeat the claim "by showing that the claimant's possession was permissive." *Braunstein*, 2010 WY 26, ¶ 17, 226 P.3d at 833 (quoting *Hillard*, 888 P.2d at 1261). "If the title holder can do that, then it becomes a question of weight and credibility to be determined by the trier of fact." *Braunstein*, 2010 WY 26, ¶ 17, 226 P.3d at 833.

[¶21] Here, the district court concluded that Mr. Hulme carried his initial burden of establishing a *prima facie* showing of adverse possession for the 1981 to 2003 period and that Ms. O'Hare failed to rebut that showing. Of particular significance is the district court's conclusion as to the hostility element of adverse possession. In finding that Mr. Hulme had established the element of hostility in his *prima facie* case, the district court stated:

> Mr. Hulme's testimony at the preliminary injunction hearing establishes [the] hostility element. He unequivocally testified that the Hulmes used the southern portion of the shared driveway up to the clothesline posts as if they owned it from 1981 to at least 2003, and he personally used it in the same manner from March 2006 to the end of August 2016. As

9

to the first period, he stated there was no agreement between the Hulmes and their neighbor, Jimmy Bentsen. Since moving back into 1011 8th Street in March 2006, every property owner behaved as if the clothesline posts were the property boundary until Ms. O'Hare erected the fence and effectively blocked Mr. Hulme from being able to drive his pickup down the driveway.

Turning to the question of whether Ms. O'Hare rebutted Mr. Hulme's *prima facie* showing of hostility, the district court reasoned and concluded:

> The Court readily admits it had its doubts as to whether Mr. Hulme could prevail on the hostility element of his adverse possession claim, particularly in light of the following testimony he gave at the preliminary injunction hearing:
>
> Q: Were you aware of any type of agreement between your family and the previous owners in 2017? Jimmy [Bentsen], was there any sort of agreement on the use of that driveway?
>
> A: No. We just used it. It was neighborly. We were just neighborly and we shared it.
>
> . . .
>
> However, in conducting further research on the matter in light of the parties' cross motions for summary judgment and reviewing the record, the Court finds Mr. Hulme has in fact established the hostility element based on the undisputed material facts and Ms. O'Hare has not rebutted that showing or pointed to a genuine issue of material fact in response. Specifically, even if mistaken about the proper location of the property line and lacking ill intent, the Hulmes and Jimmy Bentsen conducted themselves as if the boundary between the properties was the clothesline posts. Starting in 1981 and lasting at least until 2003 (while Mr. Hulme lived at 1011 8th Street), each neighbor parked their vehicles and stored personal property on their respective sides of the clothesline poles. Only with permission would one store their property on the opposing side of the clothesline poles.

10

**Jimmy Bentsen either chose not to enforce the true boundary between the properties or, more likely, mistakenly believed the clothesline posts represented the true boundary**. Likewise, starting in 1981, the Hulmes enforced their property rights up to the clothesline posts, whether by mistake or with full knowledge of the true boundary line. The significant point in all of this, which the Court's additional research solidified, is that possession is not with permission simply because the parties are mistaken as to the true boundary. "Possession is hostile when the possessor holds and claims property as his own, whether by mistake or willfully." *Graybill*, ¶ 36, 332 P.3d at 522 . . . . Here, **the most likely explanation**, that the Hulmes and Jimmy Bentsen were mistaken as to the true boundary between the properties, **does not turn the Hulmes' possession of the disputed property from hostile to permissive**.

(Emphasis added and emphasis in original omitted.)

[¶22]  We take no issue with the district court's legal conclusion that a mistaken belief as to the true property boundary does not turn possession from hostile to permissive. *Graybill*, 2014 WY 100, ¶ 36, 332 P.3d at 522. However, the district court exceeded the bounds of summary judgment by making the factual finding that Jimmy Bentsen, more likely than not, was mistaken as to the true property line. As the court acknowledged, it may also have been that Jimmy Bentsen "chose not to enforce the true boundary between the properties." That possibility raises a question of material fact because "[n]o manner, duration, or scope of use can be adverse if the owner permitted it." *Galiher I*, 2017 WY 31, ¶ 22, 391 P.3d at 1106 (citing *Graybill*, 2014 WY 100, ¶ 27, 332 P.3d at 519-20). We have repeatedly explained that "when a landowner allows a neighbor to use his land, that use should be deemed permissive." *Galiher I*, 2017 WY 31, ¶ 22, 391 P.3d at 1106 (citing *Gray v. Fitzhugh*, 576 P.2d 88, 90-91 (Wyo. 1978)); *see also Little Medicine*, 2019 WY 103, ¶ 22, 450 P.3d at 229; *Galiher v. Johnson*, 2018 WY 145, ¶¶ 21-22, 432 P.3d 502, 512 (Wyo. 2018) (*Galiher II*). We have also described "the special relationship that often exists between neighbors." *Little Medicine*, 2019 WY 103, ¶ 22, 450 P.3d at 229. In short, "property owners characteristically allow slight intrusions onto their land by their neighbors in order to promote good will and avoid bad feelings and confrontations." *Galiher I*, 2017 WY 31, ¶ 22, 391 P.3d at 1106 (quoting James C. Smith, *Neighboring Property Owner* § 6:1 (Nov. 2016 Update)). On the flip side, encroaching neighbors "generally [do] not intend to adversely possess" that land and thereby acquire title to it. Smith, *Neighboring Property Owner* § 6:1.

11

[¶23]   Here, Mr. Hulme's own testimony raised the question of whether Jimmy Bentsen permitted his family's use of the disputed strip of driveway.[6]  He testified that use of the driveway "was neighborly" and they "shared it."  He also noted that both his mother and Mr. Bentsen hung clothes on the clothesline between the posts.  Mr. Hulme also testified that between 1981 and 2003 he maintained the entire driveway, including a strip of grass on Mr. Bentsen's side of the clothesline posts, and that Mr. Bentsen freely used the Hulme side of the driveway for ingress and egress.  His testimony suggests the Hulmes and Mr. Bentsen indeed had the sort of neighborly "special relationship" resulting in permissive encroachments on to one another's property.[7]

[¶24]   Because the district court granted summary judgment based on the earlier period, it did not reach a conclusion concerning whether Mr. Hulme had established adverse possession in the 2006 to 2016 period.  Mr. Hulme raised the second time period below and on appeal, and we may  affirm on any basis found in the record.  *Sky Harbor Air Serv., Inc. v. Cheyenne Reg'l Airport Bd.*, 2016 WY 17, ¶ 40, 368 P.3d 264, 272 (Wyo. 2016).  However, we find no basis to grant summary judgment because there are disputed issues of material fact as to the later period as well.

[¶25]   Following their father's death, Mr. Bentsen's children gave Mr. Hulme permission to use the entire driveway while the 1017 property was vacant.  After Mr. Boles moved in, Mr. Hulme continued to maintain the entire driveway because he "was just trying to get along" with his neighbors.  He also continued to use the 1017 side of the driveway for ingress and egress and testified that it would not have bothered him if Mr. Boles had done the same on the 1011 side.  This testimony raises the possibility that these neighbors allowed slight intrusions onto their respective properties to promote good will and avoid confrontations.  Of course, the testimony does not conclusively establish that the Hulme's use of the strip of driveway was permissive.  It does, however, allow for a reasonable inference of permissive use, which is sufficient to defeat summary judgment.  *White*, 2017 WY 146, ¶ 37, 406 P.3d at 1251 ("If multiple reasonable inferences may be drawn from a particular fact, that fact is not a basis for summary judgment.").

[¶26]   Thus, we hold that the district court erred in granting summary judgment in favor of Mr. Hulme because issues of material fact concerning hostility existed.

_____

[6] Mr. Hulme argues that it was Ms. O'Hare's burden to rebut his showing of hostility with evidence of permissive use and that she failed to do so.  Thus, he reasons, the district court was free to consider the element of hostility undisputed.  We disagree.  Mr. Hulme introduced evidence that his family's use of the disputed strip of driveway may have been permissive, essentially defeating his own *prima facie* case of adverse possession (at least as viewed on summary judgment).  We note that Ms. O'Hare did not appeal the denial of her motion for summary judgment on Mr. Hulme's adverse possession claim.

[7] Mr. Hulme and Rick both asserted they did not have an agreement with Mr. Bentsen permitting them to use the driveway up to the clothesline posts.  We do not doubt that there was no formal agreement between the neighbors; however, "permission may be either express or implied."  3 Am. Jur. 2d *Adverse Possession* § 44 (Feb. 2020 Update).

## II. The district court erred in granting summary judgment in favor of Ms. O'Hare on Mr. Hulme's prescriptive easement claim

[¶27] Mr. Hulme also argued that he had acquired a prescriptive easement to use the entire side of the driveway north of the concrete pour seam. This claim encompassed both the area which he claimed to have adversely possessed (in the event that his adverse possession claim failed) and the remainder of Ms. O'Hare's driveway. Concerning the portion of the driveway between the seam and the posts, Mr. Hulme sought an easement "for the purposes that [he] and his predecessors [had] utilized the driveway as described . . . in his claim for adverse possession" (i.e. overflow parking, space for exiting and entering vehicles, and storage). Concerning the portion of the driveway north of the posts, Mr. Hulme sought an easement only for maneuvering around vehicles parked south of the seam. Because the court concluded that Mr. Hulme had adversely possessed the strip of driveway from the concrete pour seam up to the clothesline posts, it only considered whether the portion of the driveway north of the posts was subject to a prescriptive easement. As to that portion, the court reasoned that Mr. Hulme had "not overcome the presumption of permissive use of Ms. O'Hare's side of the driveway" and granted summary judgment in Ms. O'Hare's favor.

[¶28] While not identical, "the requirements for establishing a prescriptive easement are similar to those for adverse possession[.]" *Koontz v. Town of Superior*, 746 P.2d 1264, 1267 (Wyo. 1987). A party claiming an easement by prescription bears the burden of proving adverse use, under color of title or claim of right, sufficient to put the owner of the servient estate on notice of his claim, for a continuous and uninterrupted period of at least ten years. *Powder River Ranch, Inc. v. Michelena*, 2005 WY 1, ¶ 9, 103 P.3d 876, 880 (Wyo. 2005) (citing *Coleman v. Keith*, 6 P.3d 145, 147 (Wyo. 2000); *A.B. Cattle Co. v. Forgey Ranches, Inc.*, 943 P.2d 1184, 1188 (Wyo. 1997)). Prescriptive easements are not favored in Wyoming, and a party claiming one has a heavy burden, particularly regarding adverse use. *Powder River Ranch, Inc.*, 2005 WY 1, ¶ 9, 103 P.3d at 880 (citing *Yeager v. Forbes*, 2003 WY 134, ¶ 34, 78 P.3d 241, 255-56 (Wyo. 2003); *Prazma v. Kaehne*, 768 P.2d 586, 589 (Wyo. 1989)). Indeed, "we generally presume that use of a private roadway by a neighbor is permissive." *Powder River Ranch, Inc.*, 2005 WY 1, ¶ 9, 103 P.3d at 880.[8] "The presumption of permissive use is, however, rebuttable." *Id*.

---

[8] We note that there is some inconsistency in our case law regarding the presumption that should apply to the adversity element of prescriptive easement claims. *See Shumway v. Tom Sanford, Inc.*, 637 P.2d 666, 669 (Wyo. 1981) (identifying cases that have applied a presumption of adverse use and others that have applied a presumption of permissive use); *see also Koontz*, 746 P.2d at 1270 (Urbigkit, J., concurring in part and dissenting in part) (criticizing majority for applying presumption that public's use of street crossing private lots was adverse, arguing this presumption is inconsistent with weight of authority applying the presumption that the use was permissive). However, we have clarified in numerous cases that a presumption of permissive use is appropriate in cases involving claimed prescriptive easements between neighbors. *See Lincoln Cty. Bd. of Comm'rs v. Cook*, 2002 WY 23, ¶¶ 46-47, 39 P.3d 1076, 1088-89 (Wyo. 2002); *A.B. Cattle Co.*, 943 P.2d at 1188; *Weiss v. Pedersen*, 933 P.2d 495, 501 (Wyo. 1997), *overruled on*

[¶29] The district court's error in granting summary judgment on Mr. Hulme's adverse possession claim resulted in an incomplete analysis of the prescriptive easement claim. Because the district court considered the dispute over the area between the seam and posts resolved by its adverse possession decision, it did not analyze or come to any conclusion concerning an easement over that area. Indeed, had the adverse possession decision been correct, there would be no need for an easement over that area. However, our reversal of the district court's decision on the adverse possession claim revives the question of whether Mr. Hulme had acquired an easement over the strip of driveway between the seam and the posts. Because the prescriptive easement cannot be resolved independent of the adverse possession claim, we reverse and remand as to this issue as well.[9]

### III. The district court did not err in granting summary judgment in favor of Ms. O'Hare on Mr. Hulme's implied easement claim

[¶30] To establish an implied easement,[10] the following elements must be satisfied:

> (1) common ownership followed by a conveyance separating the unified ownership; (2) before severance, the common owner used part of the property for the benefit of the other part, a use that was apparent, obvious, and continuous; and (3) the claimed easement is necessary and beneficial to the enjoyment of the parcel previously benefitted.

*Hansuld v. Lariat Diesel Corp.*, 2010 WY 160, ¶ 10, 245 P.3d 293, 298 (Wyo. 2010) (*Hansuld II*) (quoting *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 15, 81 P.3d 215, 218 (Wyo. 2003) (*Hansuld I*)). Whether an easement by implication exists depends on the intent of the parties who conveyed the land in question. *Hansuld II*, 2010 WY 160, ¶ 10, 245 P.3d at 298 (citing *Hansuld I*, 2003 WY 165, ¶ 16, 81 P.3d at 218). "The doctrine of

---

*other grounds by White v. Allen*, 2003 WY 39, 65 P.3d 395 (Wyo. 2003). We do not decide the presumption to be applied in other circumstances.

[9] We cannot separately analyze the prescriptive easement claim as to the portion of the driveway north of the posts, on which the district court did provide analysis and reach a conclusion. To do so would require us to decide which facts pertained exclusively to the portion of the driveway north of the posts. Mr. Hulme's asserted uses of the driveway between the seam and posts differed from the use asserted north of the posts, as do the facts and testimony on which those uses are based. We are unable to parse those facts on the record before us, and the parties provide little assistance in that regard. Moreover, neither party argues that we should affirm or reverse the prescriptive easement decision based exclusively on the portion of the driveway north of the posts. Instead, they seek a decision on the entirety of the area north of the concrete seam. We cannot do so based on the district court's decision. Any decision on the prescriptive easement claim would relate only to the area north of the posts, and the parties give us no indication of what would become of the prescriptive easement claim over the 30-inch strip on remand.

[10] In contrast to the prescriptive easement claim, we are able to clearly discern the facts necessary to the implied easement analysis from the record and conclude that the claim is not viable for either portion of the driveway.

14

implied easements was created for courts to examine the particular facts suggesting the intent of the parties to a conveyance and determine if the parties omitted granting an easement reasonably necessary for the use and enjoyment of the property." *Hansuld II*, 2010 WY 160, ¶ 10, 245 P.3d at 298. We "determine the parties' intent at the time that the unified property was severed[.]" *Id.*

[¶31] Mr. Hulme asserts, and Ms. O'Hare concedes, that the 1017 and 1011 properties were once commonly owned and later severed by a conveyance. However, we agree with the district court that Mr. Hulme cannot demonstrate that the claimed easement is necessary and beneficial to the enjoyment of the parcel previously benefitted.

[¶32] First, Mr. Hulme has not identified any obvious use of the 1017 lot for the benefit of the 1011 lot prior to severance, either in his response to Ms. O'Hare's motion for summary judgment or on appeal. Mr. Hulme argues that it is "clear from the facts" that the common owner of the two properties intended the Hulme property to be benefitted "by such portion of the O'Hare property as would be required to get to the garage with a vehicle[.]" We do not agree. Mr. Hulme has not provided any evidence of how the two properties were used prior to severance, let alone any "apparent" or "obvious" uses.

[¶33] Further, Mr. Hulme cannot show that an implied easement is necessary to enjoyment of his property. In *In re Estate of Shirran*, we explained the concept of necessity in the context of implied easements. 987 P.2d 140, 145 (Wyo. 1999). There, a commonly owned, mountainous parcel of land was severed. *Id.* at 141. The owner of one of the severed parcels began denying his neighbor access to a road that had been the usual means of accessing the neighbor's parcel when the properties were united. *Id.* Although use of the parcel remained possible via an alternative route, we held that the "necessary and beneficial" element of an implied easement claim had been satisfied because the alternative route traveled through mountainous terrain on a rough back road and required the neighbor to drive four to five additional miles to reach his parcel. *Id.* at 145. We reasoned that the additional four to five miles, particularly when coupled with the condition of the road and the mountainous terrain, would require the neighbor to endure disproportionate effort and expense. *Id.* We also found it significant that, prior to severance, the neighbor's parcel had traditionally been accessed via the road traversing the other property, because we look to "the condition of the property as it actually was at the time of [severance]," including any "obvious preexisting use of one part of the property to benefit another part." *Id.* at 143.

[¶34] Here, the Hulme property can be used without the benefit of the easement, although perhaps not exactly as Mr. Hulme would like. Ingress and egress onto the property remains possible via the alley running behind the property, where a second garage door provides access to Mr. Hulme's garage. The evidence at summary judgment did not indicate the alleyway route required Mr. Hulme to travel a materially greater or more difficult distance. Instead, Mr. Hulme asserted that this alternative entry hindered use of his shop because the

15

alley garage door didn't "have as much clearance" and that manipulating vehicles into that entrance was more difficult, particularly with "full-size large truck[s]." Those inconveniences are not so great as those at issue in *Shirran* and do not deprive Mr. Hulme of the use of his property or require him to endure disproportionate effort or expense.

[¶35]  Thus, we hold that the district court did not err in granting summary judgment in favor of Ms. O'Hare on Mr. Hulme's implied easement claim.

## *CONCLUSION*

[¶36]  Material issues of fact precluded summary judgment in favor of Mr. Hulme on his adverse possession claim. The district court's error on the adverse possession claim resulted in an incomplete analysis of the prescriptive easement claim, hindering our review. The district court properly granted summary judgment in favor of Ms. O'Hare on Mr. Hulme's implied easement claim. Reversed in part and remanded for further proceedings.